**Miller v. Bargaheiser**
*[Cite as 8 AOA 135]*

*Case No. 13-88-26*
*Seneca County, (3rd)*
*Decided December 19, 1990*

*Thomas H. Shunk, Baker & Hostetler, 3200 National City Center, Cleveland, Ohio 44114-3401, for Appellants.*

*James F. Nooney, 800 United Savings Building, Toledo, Ohio 43604, for Appellees.*

*John J. McHugh, III, 1200 National Bank Building, Toledo, Ohio 43604, for Fostoria Hospital Assoc.*

EVANS, J.

This is an appeal from an order of the Court of Common Pleas of Seneca County dismissing a derivative action filed for the benefit of the Fostoria Hospital Association and granting summary judgment in favor of five hospital trustees named individually as defendants in the derivative action.

The Fostoria Hospital Association (FHA) is a non-profit corporation responsible for the operation of the Fostoria City Hospital. On September 19, 1986, appellants, Don Miller, Richard Norton, D.M. Mennel and J.P. McNerney, all members of the FHA, filed a derivative suit seeking injunctive relief and monetary damages for the benefit of the FHA. Individual trustees Icil Bargaheiser, Michael Emerine, Mohammed Anvari, Parmuan Thirasilpa and Solomon Erulkar were named as defendants together with the corporate entity FHA. Appellants' complaint generally alleged that these five trustees breached their fiduciary duties to the FHA by conspiring to operate the FHA for their own personal benefit.

Pursuant to R.C. 1702.30(B), the Board of Trustees appointed a special litigation committee (SLC), comprised of three members of the Board of Trustees "to conduct a thorough investigation into the nature of the charges raised and the claims made by the plaintiffs in the pending action; to inform itself of all material information reasonably available in connection with the charges raised and the claims made, and to prepare a thorough written record of its investigation, together with a report of its findings and recommendations". The Board of Trustees also delegated to the committee the full authority of the Board to determine whether the pending action should continue to be prosecuted on behalf of the corporation. On April 17, 1987, the committee submitted its final report recommending that the litigation was not in the best interests of the FHA. Accordingly, the FHA filed a motion to dismiss and a motion for summary judgment. Motions for summary judgment were also filed by the five individual trustees named as defendants.

On July 19, 1988, after a hearing on the motions, the Court of Common Pleas of Seneca County dismissed the complaint as to the FHA and rendered summary judgment in favor of each individual defendant and against the plaintiffs.

It is from this judgment that appellant appeals submitting two assignments of error which provide as follows:

"I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MOTION OF DEFENDANT FOSTORIA HOSPITAL ASSOCIATION, IN LIGHT OF PLAINTIFF'S EVIDENCE THAT THE SPECIAL LITIGATION COMMITTEE WAS BIASED, ACTED IN BAD FAITH AND CONDUCTED AN INADEQUATE INVESTIGATION."

"II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE MOTION OF THE INDIVIDUAL DEFENDANTS IN LIGHT OF MATERIAL FACTUAL DISPUTES CONCERNING THE LIABILITY OF EACH DEFENDANT."

Appellant's first assignment of error gives rise to the issue of the degree of deference courts are to afford the recommendation of a SLC appointed by the Board of Trustees of a non-profit corporation, to determine whether it is in the best interests of the corporation to pursue or terminate a derivative action filed on its behalf.

In *Zapata v. Maldonado* (1981), 430 A. 2d 779, the Supreme Court of Delaware concluded that a SLC has the authority to terminate a stockholder's derivative action. Following *Zapata*, judicial deference to the findings of a special litigation committee has become broadly

accepted throughout most jurisdictions. See generally, 13 W. Fletcher, Cyclopedia of the Law of Private Corporations, Section 6019.55, at 359-60 (Perm. Ed.). In *In re General Tire & Rubber Co. Sec. Litigation,* 726 F. 2d 1075, 1083 (6th Cir. 1984), the court speculated that in light of this trend and R.C. 1701.59, Ohio courts were likely to also extend the business judgment rule to the recommendations of a special litigation committee. Similar to R.C. 1701.59, R.C. 1702.30(B) provides that:

"(B) A trustee shall perform his duties as a trustee, including his duties as a member of any committee of the trustees upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a trustee is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, that are prepared or presented by:

"(1) One or more trustees, officers, or employees of the corporation whom the trustee reasonably believes are reliable and competent in the matters prepared or presented;

"(2) Counsel, public accountants, or other persons as to matters that the trustee reasonably believes are within the person's professional or expert competence;

"(3) A committee of the trustees upon which he does not serve, duly established in accordance with a provision of the articles or the regulations, as to matters within its designated authority, which committee the trustee reasonably believes to merit confidence."

We conclude that, R.C. 1702.30(B) reflects the legislative intent that corporations should be permitted to manage themselves without interference from the courts. Accordingly, we hold that R.C. 1702.30(B) authorizes the Board of Trustees governing an Ohio non-profit corporation to determine, through a SLC, whether it is in the best interest of the corporation to pursue or terminate litigation filed on its behalf.

However, there are varying views of the standards which must be met in order to demonstrate the reliability of the decision of a SLC. In *Holmstrom v. Coastal Industries, Inc.,* 645 F. Supp. 963, 965 (N.D. Ohio 1984), the court applied the following analysis:

"As an additional application of the business judgment rule in the setting of a recommendation to dismiss made by a litigation oversight committee composed of independent directors, the courts have chosen to abide by the recommendation of the special litigation committee that the action be dismissed when the committee is composed of independent or disinterested directors and their recommendation is the product of a good faith and thorough study of the issues regarding whether it is in the best interest of the corporation to pursue or to terminate the litigation."

In *Zapata, supra,* the Delaware Supreme Court promulgated a more stringent standard which included the *Holmstrom* standard but added another step to the analysis. This extra step empowered the court to exercise its own independent business judgment to consider whether the derivative suit was in the best interests of the corporation. The court offered the following rationale for the extra step:

"If, on the one hand, corporations can consistently wrest bona fide derivative actions away from well-meaning derivative plaintiffs through the use of the committee mechanism, the derivative suit will lose much, if not all, of its generally recognized effectiveness as an intra-corporate means of policing boards of directors. *** If, on the other hand, corporations are unable to rid themselves of meritless or harmful litigation and strike suits, the derivative action, created to benefit the corporation, will produce the opposite, unintended result. *** It thus appears desirable to us to find a balancing point where bona fide stockholder power to bring corporate causes of action cannot be unfairly trampled on by the board of directors, but the corporation can rid itself of detrimental litigation."

In considering the procedure to be followed, we recognize the legitimacy of the concerns voiced in *Zapata* as their rationale for adopting the more stringent standard permitting the court to exercise its own independent business judgment. However, we find this degree of scrutiny to be irreconcilable with the spirit of the business judgment rule. The court in *Japata* begins with the business judgment rule in fending a SLC to possess the authority to dismiss derivative suits. The court then runs full circle to, in the end, place the authority in the court to exercise its own business judgment. As stated in *Holmstrom, supra* at 965:

· "[a] component of the traditional view has been that the court should not assess indepen-

dently the merits of the derivative suit as to do so would defeat the purpose of the business judgment rule which is premised on the expertise of the directors to render important business decisions without interference by the courts or shareholders."

We are confident that the diligent application of the traditional procedure, as stated in *Holmstrom,* will satisfactorily strike the balance sought by the court in *Zapata* while remaining consistent with the business judgment rule.

We conclude that the legislative intent underlying R.C. 1702.30(B) empowers a SLC to determine whether to pursue or terminate a derivative suit filed on behalf of the non-profit corporation and that the courts will defer to this judgment where: 1) the SLC is comprised of independent, disinterested trustees; 2) the SLC conducts its inquiry in good faith and; 3) the committee's recommendation is the product of a thorough investigation. While the case law upon which this conclusion is based involved for-profit corporations, we know of no reason why these principles should not likewise be applicable to non-profit corporations. Further, we conclude that the application of the three standards set forth above is a matter for the sound discretion of the trial court which, absent an abuse of that discretion, will not be disturbed on review.

In application to the case *sub judice,* appellants contend that the trial court should not have relied on the SLC report because the committee which submitted the report failed the three part test used in *Holmstrom.* Appellants argue that the committee was neither independent nor disinterested. Appellant argues that this is evidenced by one of the committee members' comments made on a radio show prior to his appointment to the committee. The statements to which appellants direct our attention indicate one of the committee members' respect for his fellow board members and his opinion that a lawsuit is generally an undesirable mechanism for effecting a creative social change in one's community. Further, appellant argues that the other two members of the SLC had previously served on a hospital committee which had conducted an investigation of the former hospital administrator. Two of the named defendants also served on that committee. Additionally, appellants point out that the attorney for the SLC was also counsel for the FHA and, thus, the SLC did not have independent counsel.

In essence, the examples of alleged bias raised by appellants evidence the various relationships between the members of the SLC and the appellees. We find nothing in these contentions that convinces us that the SLC was not independent. It must be remembered that the SLC was made of members of the board of the FHA. It therefore follows that the members of the SLC had known the five named defendants over a period of time and had worked with them from time to time on other hospital business. We conclude that these relationships are incidental to board membership and are unavoidable. These incidental relationships do not necessarily prevent the members of the SLC from being independent in their evaluation of the facts presented to them. To find otherwise would make the use of an SLC practically impossible. On the record in this case we find no evidence that these incidental relationships prejudiced the work of the SLC.

The members of the SLC sat as members of the hospital board of trustees. Therefore each member of the SLC owed a fiduciary duty to the corporation known as the FHA. In the absence of probative evidence to the contrary it will be presumed that each committee member conducted the business of the committee in a manner which would fulfill that fiduciary duty. The incidental relationships arising out of board memberships are off-setting and do not rise to such importance that they would necessarily prevent the SLC from being independent. Rather, a lack of independence could be found, for example, if a business or family relationship existed between a named defendant and a committee member which would compel a report supporting the named defendant, the facts of the investigation to the contrary notwithstanding.

Appellants also contend that the investigation was not conducted in good faith. The primary basis for this contention appears to be that the committee members did not conduct the investigation but rather relied on counsel for that purpose. Also, it is contended that the committee accepted statements from the named defendants without further investigation. Finally, with respect to the SLC report, appellants contend that the investigation was not thorough because appellants' counsel was not allowed to participate and because some witnesses whose names were provided by the appellants were never interviewed.

These contentions must all be viewed from the standpoint of the SLC objective. The committee was asked to determine whether or not it was in the best interests of the FHA to continue the derivative action. To accomplish this objective the committee must have complete control over the investigation. The committee has the power to control the direction and scope of the inquiry, determine credibility of witnesses, assign weight to the evidence presented, and select or reject additional witnesses to be interviewed by the committee. How the committee completes these tasks is completely within its discretion.

Evidence that the committee did not meet face to face with every witness or accepted the statements of some witnesses as being entirely credible is not in and of itself evidence of wrongdoing on the part of the committee. Neither is there anything inherently wrong with the use of counsel to assist the committee with its work nor in excluding plaintiff's counsel from the work of the committee. In fact, R.C. 1702.30(B)(2) expressly permits reliance on counsel.

Furthermore, evidence of some slight misconduct or the appearance of an impropriety on the part of one or more of the named defendants does not preclude the committee from returning a recommendation to terminate the lawsuit and such a recommendation will not be viewed as a coverup or evidence of wrongdoing on the part of the committee.

This is not a perfect world. To expect a SLC to inquire into the activities of the defendants named in a derivative action and find absolutely no evidence of misconduct or not even the appearance of impropriety is not realistic. Indeed there are few among us who never make a misstep, who never have a momentary lapse and then in hindsight realize that what was done was not entirely appropriate. However, it is not the job of this committee to sniff out every particle of misconduct attributable to these named defendants and submit all to the court and jury for final evaluation. The committee must determine what is in the best interests of the corporation and then recommend a course of action to the trial court for the disposition of the derivative action. If the committee determines that certain misconduct should be corrected by action within the corporation rather than in the public arena of the court room then a recommendation to dismiss the lawsuit should be made and such action will not be seen as a cover up or as evidence of an incomplete or a bad faith investigation.

Upon review of the record, we conclude that the trial court acted well within its sound discretion in accepting the recommendation of the SLC and dismissing appellants' derivative suit. Accordingly, the appellants' first assignment of error is not well taken and is overruled.

For their second assignment of error appellants contend that there are material facts in dispute as to each of the named defendants and it was therefore error to grant summary judgment in their favor.

We disagree. The issue before the trial court was the reliability of the SLC report and recommendation. If the trial court finds the report to be reliable then as a matter of law summary judgment should be granted for each of the named defendants. To be sure, there are facts in dispute between the parties, however, these facts are not material. What is material is the reliability of the committee's report and recommendation. We have already said that there is insufficient evidence to undermine the committee report. That report recommends the termination of the derivative action, not with respect to some of the defendants but as to all defendants. Thus, the court was correct to grant summary judgment in favor of all the individual defendants as a matter of law.

Accordingly, appellants' second assignment of error is not well taken and is overruled.

Having found no error prejudicial to the appellants herein, in any of the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHAW, P.J., and BRYANT, J., concur.