**Charles G. CURTIS; Charles Curtis & Patricia Morse Curtis Foundation, a Colorado nonprofit corporation; and Chaffee Corporation, a Colorado corporation, Plantiffs,**

v.

**Thomas D. NEVENS, William Culbertson, Arthur Krill, and Richard Sullivan, Defendants.**

**No. 00SA314.**

Supreme Court of Colorado, En Banc.

Sept. 10, 2001.

---

1. Accordingly, we do not review the suppression of the copy of the document obtained from Westaff.

Hanes & Schutz, P.C., Richard W. Hanes, Timothy J. Schutz, Colorado Springs, CO, Attorneys for Plaintiffs.

Elzi & Gurr, Stephen D. Gurr, Denver, CO, Attorneys for Defendants Thomas D. Nevens and William Culbertson.

Lapin & Associates, P.C., James B. Lapin, Marguerite N. Conboy, Denver, CO, Attorneys for Defendants Arthur Krill and Richard Sullivan.

Greenberg Traurig, LLP, Josiah O. Hatch, Vikki L. Wulf, Denver, CO, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Justice BENDER delivered the Opinion of the Court.

## I.  INTRODUCTION

In this original proceeding involving a shareholder's derivative suit, we address the scope of the trial court's review when asked to approve the appointment of a special litigation committee ("SLC") before the committee has begun its investigation.  Recently, in *Hirsch v. Jones Intercable, Inc.,*[1] we held that the trial court's review of the committee's work and recommendation must be deferential and limited to an inquiry into the independence and good faith of the committee and the reasonableness of its procedures.

Here, the trial court, after finding the committee to be independent and disinterested, refused to approve the appointment because the court found that the procedures for investigation and analysis proposed by the committee were unreasonable.  Applying the principles of law articulated in *Hirsch* to this setting, that is when the investigation by the committee has not yet started, we hold that the trial court's review is limited to a determination of whether the committee is independent and disinterested.  The trial court may not inquire into the reasonableness of the procedures proposed by the committee until the committee completes its task, absent exceptional circumstances not argued here.  Once such a committee has been appointed, the trial court should grant a stay of the shareholder derivative suit for a limited time for the committee to complete its work unless compelling facts exist that support the need to continue the plaintiff's discovery.

Because the trial court found the SLC independent and disinterested, we make the rule absolute and direct the trial court to appoint the SLC proposed by the Chaffee Board and to stay the shareholder derivative suit proceedings for a reasonable time for the SLC to complete its investigation and report.

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiffs, Charles G. Curtis, a board member of the Chaffee Corporation, and his family trust (collectively "Curtis") brought this shareholder derivative suit against the defendants, who were the majority members of the Chaffee Board ("Chaffee Board").

The Chaffee Corporation was in the business of producing a mineral used in fertilizer

---

**1.**   984 P.2d 629, 637–38 (Colo.1999)

and as an animal feed additive. Curtis alleges that members of the Chaffee Board breached their fiduciary duty and acted negligently in controlling the seepage of toxic chemicals into soils and ground water. In 1999, the Chaffee Board sold its business and most of its assets to Tetra Technologies, Inc. According to Curtis, as a result of the Board's alleged misconduct, the price of the sale was significantly reduced, and Tetra Technologies refused to purchase the plant facility and real estate affected by the toxic seepage.

Before the completion of any discovery, the Chaffee Board adopted a resolution to appoint a special litigation committee to conduct an impartial and independent review of the claims arising out of the litigation and to determine whether it is in the best interests of the Chaffee Corporation to continue this litigation. The Board selected David Palmer of the law firm Zevnik, Horton, Guibord, McGovern, Palmer, & Fognani, L.L.P. as independent counsel to serve as a special litigation committee.

The Chaffee Board filed a motion seeking approval of Mr. Palmer as the SLC. At a hearing on this motion Mr. Palmer testified he would use his experience litigating complex business cases over the past thirty years to analyze what course of action would be in the corporation's best interest. He admitted that he is not a businessman and had not been to business school.

At the close of this hearing the trial court denied the motion to approve Mr. Palmer as the SLC.[2] The court stated that it could play the same role as Mr. Palmer because the court could perform the role of a "12(b)(5) gatekeeper," without wasting time and corporate resources on the approximately $100,000 SLC process that would only benefit the

director-defendants who sought Mr. Palmer's appointment:

> Basically, at the end of the day—if I appointed Mr. Palmer as the SLC, at the end of the day when Mr. Palmer gets done, I'm either going to be told that I ought to dismiss the case and let all defendants off the hook, so to speak, of the lawsuit or I should pick up where I left off, all of this at the expense of approximately $100,000 or more to the corporation, to the stockholders, and in this manner it seems to me like it wastes some time and it puts the defendants in a position where they can't lose at all, at least to a certain point.

The court reconsidered and affirmed its decision in a written order ruling that our decision, *Hirsch*, permits "discretion of the trial court in determining, not only independence and disinterest of Independent Counsel, but also the reasonableness of the procedures followed by the Independent Counsel." The trial court stated that "because the Independent Counsel's activities in this case are prospective, it is impossible to fully judge the reasonableness of the procedures employed." However, to the extent the court could, it found these procedures unreasonable. The trial court reasoned that "[o]ther than the business judgment, the proposed independent counsel testified as to no recognized standard which he would apply in making [the] collection of determinations."

Pursuant to C.A.R. 21, defendants seek a review of two of the trial court's rulings. First, defendants argue that the trial court erred when it denied the appointment of Independent Counsel as the SLC after finding that he was qualified and an independent decisionmaker. Second, the defendants assert that the trial court erred by refusing to stay the action pending the SLC's investigation and report.[3] We agree with each of the defendant's arguments.

---

**2.** In this original proceeding, Curtis argues that the corporate board lacked statutory authority to form a special litigation committee comprised solely of an independent counsel, reasoning that section 7–108–206, 2 C.R.S. (2000), only provides corporations the authority to form committees if at least one director of the board is a member of the committee. Curtis did not make this argument to the trial court, thus we express no opinion on this issue. *Cf. Bernklau v. Stevens*, 150 Colo. 187, 197, 371 P.2d 765, 770 (1962)

("[I]ssues not raised in the trial court cannot be raised for the first time on writ of error.").

**3.** The precise questions presented in this petition for a rule to show cause are as follows:
1. Did the trial court exceed its power and act contrary to law in refusing to approve the Chaffee Board's appointment of Mr. Palmer to act as the SLC, where the trial court found that Mr. Palmer is a qualified, independent and disinterested decisionmaker?

## III. ANALYSIS

We begin our analysis by emphasizing that the trial court denied the board's appointment of an SLC before the SLC did its work, but only after the trial court found that the SLC was disinterested and independent. Although *Hirsch* involved a different factual scenario than this case, post-investigation as opposed to pre-investigation by the SLC, its principles are relevant here.

### A.

■■ *Hirsch* involved a derivative action, which is a mechanism used in the corporate context by shareholders to sue on behalf of a corporation when those in control of a corporation decide not to pursue a claim belonging to the organization. *Hirsch*, 984 P.2d at 633–34. Shareholders may use derivative suits, as in the present case, to file suit in the name of the corporation against the alleged wrongdoers, naming the board of directors as defendants. *Id.* at 634.

■ A corporate board of directors has the responsibility of managing the business and affairs of the corporation. However, the board must address the question of whether to go forward with the suit as part of its corporate management duties even though the suit names a majority of the board as defendants. *Id.* at 634, 636. Therefore, in cases involving board members as parties to the litigation, ordinarily the decision whether to dismiss the suit is delegated to a special litigation committee formed of individuals independent of those charged with wrongdoing. *Id.* at 637.

■ This panel conducts a review, evaluates the shareholder's claims, and prepares a report as to the advisability of terminating the derivative action. *See* 13 Timothy P. Bjur & James Solheim, *Fletcher Cyclopedia of the Law of Private Corporations* § 6019.50 (rev. ed.1995). After an objective and thorough investigation the committee may cause

the corporation to file a pretrial motion to dismiss. *Zapata Corp. v. Maldonado*, 430 A.2d 779, 788 (Del.1981). Guiding the SLC in its investigative and evaluative process is the principle that the continuation of the shareholder derivative suit may not be in the best interest of the corporation. *Id.* The SLC investigation and report provide the corporation with an important tool to rid itself of meritless or harmful litigation. *Id.*

■ The scope of a trial court's review of an SLC's recommendation to dismiss a shareholder derivative suit, as we held in *Hirsch*, is both deferential and limited. Recognizing that jurisdictions vary in the scope allotted a trial court in reviewing an SLC motion to dismiss, we agreed with the New York Court of Appeals, which in part limits the inquiry to "one discrete question: whether the members of the SLC are disinterested and independent." *Id.* at 637–38 (citing *Auerbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1001 (1979)). As support for the narrow and limited role of the trial court, we relied upon the business judgment doctrine, which shields the deliberations and conclusions of an SLC from court review. *Id.; see also Auerbach*, 419 N.Y.S.2d 920, 393 N.E.2d at 1001.

■ This doctrine "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Hirsch*, 984 P.2d at 637 (quoting *Auerbach*, 419 N.Y.S.2d 920, 393 N.E.2d at 1000). The business judgment doctrine reflects the reality that courts "are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments." *Id.* at 638 (quoting *Auerbach*, 419 N.Y.S.2d 920, 393 N.E.2d at 1000). Thus, if a trial court finds an SLC disinterested and independent, then the court "cannot inquire as to which factors were considered by that committee or the relative weight accorded them in reaching that substantive decision."

2. Did the trial court exceed its power and act contrary to law in refusing to stay the action pending the SLC's investigation and report on the derivative claims?

**152**

*Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1002.

▮ The action of the SLC, however, consists not only of a substantive decision to terminate or pursue derivative litigation, but it also involves the selection of procedures appropriate to its investigation. *Id.* 419 N.Y.S.2d 920, 393 N.E.2d at 1002. Unlike evaluation of a business judgment, trial courts are well equipped to evaluate the methodology and procedures best suited to conduct such an investigation. *Id.* Thus, we concluded in *Hirsch,* after the SLC finishes its investigation and recommends dismissal, that a trial court should determine both the independence and disinterestedness of an SLC and whether that committee "employ[ed] reasonable procedures in his analysis" before following the recommendation of the SLC. *Hirsch,* 984 P.2d at 638. However, we note and agree with the cautionary words expressed by the New York Court of Appeals in *Auerbach,* that a court "may not under the guise of consideration of such factors trespass in the domain of business judgment." *Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1002.

### 1.

▮ The trial court concluded that our decision in *Hirsch* permits a trial court to review the independence and procedures of an SLC not only after its investigation, but that it also permits review of the reasonableness of the SLC's prospective procedures. Even though the trial court found the independent counsel independent and disinterested, the court refused to approve this appointment because the SLC proposed "unreasonable" procedures for investigation.

Initially, we note that inquiry into the independence and good faith of committee actions is necessary to protect against the structural bias that exists in the delegation of power by director-defendants to a special litigation committee. *See* Bjur & Solheim, *supra,* § 6019.50. Court review of the independence of the committee addresses the concern of bias that may occur when the Board of Directors appoints a panel of members to serve on the SLC. In other words, the minority shareholders possess a legitimate concern that the SLC's analysis will be tainted by the SLC's allegiance to the director-defendants whose alleged misconduct gave rise to their claims.[4] Curtis describes the structural bias inherent in this appointment as "placing the corporate fox in charge of the shareholder's hen house."

▮ In contrast to the independence and disinterestedness of the SLC, a review of the reasonableness of the SLC's proposed procedures and its approach is not feasible before the SLC completes its work.[5] The cornerstone of a court's review of the SLC's procedures rests on an evaluation of the thoroughness of that committee's investigation. *Hasan,* 729 F.2d at 379 (holding that the SLC's "investigation lacked the thoroughness which is necessary for a truly objective and meaningful recommendation"); *Grafman v. Century Broad. Corp.,* 762 F.Supp. 215, 220 (N.D.Ill.1991); *Kaplan v. Wyatt,* 484 A.2d 501, 519–20 (Del.Ch.1984) (concluding that an adequate investigation is evidenced by a "comprehensive and well documented" report); *Miller v. Bargaheiser,* 70 Ohio App.3d 702, 591 N.E.2d 1339, 1343 (1990). Some of the factors relevant to the adequacy of the committee's investigation may include the length and scope of the investigation, the use of experts, the corporation or defendant's involvement, and the adequacy and reliability of information supplied to the committee. *See Drilling v. Berman,* 589 N.W.2d 503, 509 (Minn.Ct.App.1999); *Lewis v. Boyd,* 838 S.W.2d 215, 224 (Tenn.Ct. App.1992).

---

4. *Hasan v. Clevetrust Realty Investors,* 729 F.2d 372, 376–77 (6th Cir.1984) (applying Massachusetts law); *Lewis v. Anderson,* 615 F.2d 778, 782–83 (9th Cir.1979); *Miller v. Register & Tribune Syndicate, Inc.,* 336 N.W.2d 709, 718 (Iowa 1983); *Houle v. Low,* 407 Mass. 810, 556 N.E.2d 51, 54–55 (1990).

5. There may exist a unique factual scenario that will compel the trial court to review the SLC's proposed procedures. However, this would constitute an extraordinary case and was not argued here.

These factors make it, as the trial judge acknowledged in his written order, impossible to judge the thoroughness of the SLC's procedures before that committee completes its investigation. The selection of appropriate methods will evolve as the nature and characteristics of the subject matter reveal themselves in the investigation. *See Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1003. Thus, we hold that the trial court erred by reviewing the reasonableness of the SLC's proposed procedures once it found that the SLC was independent and disinterested. In a pre-investigation context, the trial court may determine the independence of the SLC but may not, absent extraordinary circumstances not argued here, review the reasonableness of the SLC's proposed procedures.

### 2.

■ Having ruled that the trial court erred when it considered the reasonableness of the SLC's proposed procedures, we address the reasoning of the court in reaching this conclusion because the trial court may have occasion in the future to review the SLC's procedures after it completes its investigation and submits its report. The trial court stated that the SLC's procedures were unreasonable because the SLC proposed using a business judgment standard to guide its analysis and because the SLC process wasted corporate resources for the sole benefit of the defendant-directors. We conclude that the trial court's reasoning trespassed in the domain of the SLC's substantive decision-making process in violation of the business judgment doctrine. *See Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1002–03.

■ We disagree with the court's statement that a business judgment standard, without more, constitutes an insufficient basis upon which the SLC should base its analysis. In *Hirsch,* we were persuaded by the rationale expressed by the New York Court of Appeals to define narrowly the scope of the trial court's role in evaluating the substantive decision of the SLC to dismiss a derivative suit since such a recommendation constitutes a business judgment made in fur-

therance of the best interests of the corporation. Thus, we disagree with the trial court and note that it is appropriate for the SLC to use the business judgment standard to guide its analysis.

■ Curtis argues that because the Chaffee Corporation no longer actively engages in business, a business judgment standard is unreasonable to guide the SLC's procedures in this case. We disagree. The business judgment doctrine precludes the trial court from inquiring into the factors considered and balanced by an SLC since this inquiry "would go to the very core of the business judgment made by the committee." *Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1002. Precisely because a court cannot duplicate the business judgment of an SLC, and is "ill equipped" to do so, the trial court cannot reject an SLC appointment based on factors that the court assumes the SLC will use to determine the best interests of the corporation. *See Hirsch,* 984 P.2d at 638. In such a case, the trial court trespasses on the substantive judgment of the SLC in violation of the business judgment doctrine.

Having determined that the business judgment of an SLC is an appropriate standard to guide the SLC in its analysis, we turn to the trial court's conclusion that the SLC process would be wasteful and thereby create an unnecessary expense to the corporation. The trial judge noted that he could perform the same role as the SLC, since he viewed his role as a 12(b)(5) gatekeeper as similar to that of the SLC.

■ This limited view of the SLC misperceives its role. An SLC acts in place of the Board of Directors who have been accused of wrongdoing when it decides whether dismissal or maintenance of the derivative suit is in the best interests of the corporation. Of course, in some cases, the SLC may analyze the legal sufficiency of the plaintiff's complaint using an analysis quite similar to what a trial court does when it considers a 12(b)(5) motion to dismiss. However, the SLC decision may, in many cases, embrace a broader

range of considerations than does a court when conducting a 12(b)(5) analysis. The SLC may, in appropriate cases, weigh and balance many issues, some of which are "legal, ethical, commercial, promotional, public relations, fiscal and other factors familiar to the resolution of many if not most corporate problems." *Auerbach*, 419 N.Y.S.2d 920, 393 N.E.2d at 1002.

In addition, we are unpersuaded by the court's concern for the approximately $100,000 cost of the SLC process to the corporation. We note that the court appeared to be influenced in part by the fact that if the SLC recommends dismissal of the derivative suit, then all of the defendants will be "let ... off the hook," without incurring any individual cost to themselves. In nearly every case where a corporate board appoints an SLC, there will be some expense to the corporation because, in effect, such an appointment adds a new party to the litigation. *See Kaplan*, 484 A.2d at 511–12. A corporate board may delegate its authority to dismiss or to maintain a derivative lawsuit, even when the board consists of director defendants. *Hirsch*, 984 P.2d at 637 n. 8. Practical application of this principle means that a board of directors possesses the discretion to appoint a special litigation committee provided the committee is independent and acts in good faith despite the unavoidable additional cost to the corporation and despite the potential economic benefit to the corporate directors who have been accused of mismanagement.

Hence, we conclude that the trial court erred when it ruled that the SLC's proposed procedures were unreasonable.

### B.

The defendants argue that if an SLC is appointed, then the district court should grant a stay to provide the SLC an opportunity to conduct its investigation. We agree.

Most courts grant a stay once an SLC has been appointed. "The common practice today in derivative litigation is to stay discovery by the plaintiff pending preparation and submission to the court of a report by the board or a committee appointed by the board to evaluate the action and its impact on the corporation." 2 American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 7.06 cmt. c (1994).

The reason for granting a stay in such cases is to allow the SLC time to finish its task, that is to determine whether it is in the best interests of the corporation to maintain the derivative suit. *Abbey v. Computer & Communications Tech. Corp.*, 457 A.2d 368, 375 (Del.Ch.1983). Otherwise, a plaintiff's efforts to continue discovery at the same time as the special litigation committee conducts its investigation may impede the committee's mission to determine the best interests of the corporation. *Id.* Thus, "the right of the independent committee to investigate and report its findings must take priority over any entitlement of the plaintiff to go forward with the pending action." *Id.* at 376.

If the plaintiff shows that circumstances are sufficiently extraordinary to require an exception to the rule, however, then the court may deny a motion to stay the proceedings. *See Strougo ex rel. Brazil Fund, Inc. v. Padegs*, 986 F.Supp. 812, 815 (S.D.N.Y.1997). For example, one extraordinary circumstance may be that the interval between the appointment of an SLC and the motion for a stay was untimely. *See id.*

However, in most cases the court need not grant an indeterminate stay. The court must balance the need of an SLC to complete its investigation with the chilling effect a long stay can have on the derivative suit. It is appropriate for the court to scrutinize closely the committee's procedures and to require the SLC to demonstrate expeditious and reasonable diligence in the conduct of the investigation. *See* American Law Institute, *supra*, § 7.06 cmt. c ("[I]f the committee cannot undertake and complete its

investigation expeditiously, the stay should not be continued, and the plaintiff should be permitted to commence discovery.").

In this case, the plaintiff has not shown nor argued for any extraordinary circumstances that would justify an exception to the general rule that a stay should be granted. Therefore, we hold that upon approval of the SLC, a stay should be granted for a limited, reasonable time for that committee to complete its investigation.

## CONCLUSION

We hold that, where an SLC's investigation has not yet begun, the trial court is limited to determining whether the committee is independent and disinterested and may not, unless there are exceptional circumstances not argued here, inquire into the reasonableness of the procedures used by the committee until the committee finishes its work. Hence, because the trial court found Mr. Palmer to be independent and because there is no evidence of extraordinary circumstances, we make this rule absolute and direct the trial court to approve the SLC proposed by the Chaffee Board and to grant a stay for a limited time for Mr. Palmer to complete his investigation.