2012 COA 47

Daniel E. YOUNG, individually, and on behalf of himself and other members of Cutthroat Ranch LLC, a Colorado limited liability company; Quebec Plaza LLC, a Colorado limited liability company; University Park Place, LLC, a Colorado limited liability company; and Leetsdale Self Storage, LLC, a Colorado limited liability company, acting on a member derivative basis, Plaintiff–Appellant,

v.

Eric BUSH; Bush Development, Inc., a Colorado corporation; Cutthroat Ranch LLC, a Colorado limited liability company; Quebec Plaza LLC, a Colorado limited liability company; University Park Place, LLC, a Colorado limited liability company; and Leetsdale Self Storage, LLC, a Colorado limited liability company, Defendants–Appellees.

No. 11CA0496.

Colorado Court of Appeals, Division A.

March 15, 2012.

---

James E. Freemyer, P.C., James E. Free-myer, Robert K. Reimann, Denver, Colorado, for Plaintiff–Appellant.

Senn Visciano Canges, P.C., Frank W. Vis-ciano, Joel W. Kiesey, Denver, Colorado, for Defendants–Appellees.

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

Opinion by Judge VOGT.\*

¶1 Plaintiff, Daniel E. Young, as an individual and on behalf of Cutthroat Ranch LLC, Quebec Plaza LLC, University Park Place, LLC, and Leetsdale Self Storage, LLC (the LLCs), appeals the trial court's summary judgment dismissing his claims against defendants, Eric Bush, Bush Development, Inc., and the LLCs. We affirm in part, reverse in part, and remand for further proceedings.

### I. Background

¶2 Eric Bush is the founder and president of Bush Development. Bush was also the founder and sole manager of the LLCs, which were formed to acquire and develop real estate. The LLCs had between four and seven members each, including plaintiff. Bush, plaintiff, and two other members of the LLCs are brothers.

¶3 In 2008, plaintiff began questioning Bush's management of the LLCs. Plaintiff and Bush initially discussed a settlement whereby Bush agreed to pay plaintiff a sum of money in exchange for a release, but the settlement was not concluded. Plaintiff next filed an action in district court for access to financial records and an accounting. The parties stipulated to dismissal of that action, and Bush granted plaintiff access to the requested financial records. An accounting firm reviewed the records and found "numerous issues," which it summarized in a twenty-three-page report.

¶4 Plaintiff then filed the action giving rise to this appeal. He asserted thirteen claims "individually, on behalf of himself and other members of the LLCs ... acting on a member derivative basis" against Bush, Bush Development, and the LLCs. Thereafter, the LLC members held a special meeting—attended by plaintiff, other LLC members, and counsel, but not by Bush—to determine whether proceeding with the derivative action was in the LCCs' best interests. All members except plaintiff agreed that it was not.

§ 24–51–1105, C.R.S.2011.

¶ 5 Defendants then moved for dismissal of the action or for summary judgment, asserting that, pursuant to section 7–80–716, C.R.S. 2011, dismissal was required because a majority of the independent members had determined that pursuing the derivative action was not in the LLCs' best interests. Plaintiff responded that genuine issues of material fact existed as to whether the best interests determination had been made by independent members and whether it was based upon an adequate inquiry—both, requirements for dismissal under section 7–80–716. Plaintiff asked that the motion be denied or, in the alternative, that he be allowed further discovery, as described in his attorney's accompanying affidavit, pursuant to C.R.C.P. 56(f). He also asserted that his third claim for relief, for breach of the settlement agreement with Bush, was not a derivative but a direct claim and was therefore not subject to dismissal.

¶ 6 The trial court entered summary judgment for defendants. It concluded that section 7–80–716 "allows the trial court to liberally construe a member's vote and his independent status regarding the derivative proceeding," and that plaintiff had failed to meet his burden under the statute of proving either lack of independence or inadequacy of the members' inquiry. Subsequently, in response to plaintiff's motion for clarification, the trial court signed an order reinstating the third claim for relief; by the time it did so, however, plaintiff had filed his notice of appeal and the court therefore lacked jurisdiction to enter the order.

## II. Standards of Review and of Statutory Construction

¶ 7 The standard of appellate review of orders dismissing derivative claims depends on whether there was an evidentiary hearing. Where, as here, the trial court resolves the motion as a matter of law without an evidentiary hearing, our review is de novo. *Day v. Stascavage,* 251 P.3d 1225, 1229 (Colo.App.2010); *cf. Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1218 (Colo.2002) (appellate court reviews de novo a trial court's summary judgment, which may enter only where there is no genuine issue of material fact and moving party is entitled to judgment as a matter of law).

¶ 8 We likewise review de novo the trial court's determination of the proper legal standard to apply to the issue before it, *see Thomas v. Rahmani–Azar,* 217 P.3d 945, 947 (Colo.App.2009), and its interpretation of a statute, *Klinger v. Adams Cnty. Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006).

¶ 9 When interpreting statutes, a court's primary task is to ascertain and give effect to the intent of the general assembly. We do this by looking first to the statute's plain language. Where the language is clear and unambiguous, we apply it as written. *Id.; Sheffield Servs. Co. v. Trowbridge,* 211 P.3d 714, 719 (Colo.App.2009). Where it is ambiguous, we look to other factors, such as the legislative history, the consequences of a given interpretation, or the end to be achieved. *Klinger,* 130 P.3d at 1031.

## III. Analysis

### A. Dismissal of Plaintiff's Derivative Claims

¶ 10 Plaintiff contends that the trial court erred in dismissing his derivative claims, because (1) it incorrectly applied a cursory, "liberal" standard in addressing the independence of the members who voted that his action was not in the LLCs' best interests, rather than applying case law applicable to corporate and limited partnership derivative actions; and (2) there was, in any event, a genuine issue of material fact as to the independence of those members and the adequacy of the inquiry on which their determination was based. We agree that the case must be returned to the trial court so that plaintiff may conduct discovery on the issues of independence and adequate inquiry and the court may then assess, under the standards set forth here, whether the derivative claims should be dismissed under section 7–80–716.

### 1. Derivative actions against LLCs

¶ 11 In the corporate context, a derivative action is a mechanism by which shareholders can sue on behalf of a corporation when those in control of the corporation have

opted not to pursue a claim belonging to it. *Curtis v. Nevens,* 31 P.3d 146, 151 (Colo. 2001); *Hirsch v. Jones Intercable, Inc.,* 984 P.2d 629, 633–34 (Colo.1999). Colorado statutes provide for derivative actions against business corporations, *see* § 7–107–402, C.R.S.2011, and nonprofit corporations, *see* § 7–126–401, C.R.S.2011, and they extend the same remedy to limited partners, whose derivative rights are much like those of shareholders. *See* § 7–62–1001, C.R.S.2011; *Day,* 251 P.3d at 1228; *Hirsch,* 984 P.2d at 631; *see also Kline Hotel Partners v. Aircoa Equity Interests, Inc.,* 708 F.Supp. 1193, 1195 (D.Colo.1989) (unlike shareholders and limited partners, general partners have no right under Colorado law to bring a derivative action on behalf of a general partnership).

¶ 12 Limited liability companies are a relatively recent innovation in the law governing business entities. They have become popular because they offer members the limited liability protection of a corporation, together with the single-tier tax treatment of a partnership. *See Water, Waste & Land, Inc. v. Lanham,* 955 P.2d 997, 1000 (Colo.1998); *Sheffield,* 211 P.3d at 719.

¶ 13 In 1990, the Colorado General Assembly enacted the Colorado Limited Liability Company Act (CLLCA), codified at sections 7–80–101 to –1101, C.R.S.2011, thereby becoming the third state, after Wyoming and Florida, to enact such legislation. *See Water, Waste, & Land,* 955 P.2d at 1000 (discussing sources and background of CLLCA); *Sheffield,* 211 P.3d at 719. A synopsis of the proposed legislation provided to the Senate Committee on Business Affairs and Labor on January 22, 1990, pointed out that, while both large and small businesses would find the LLC a useful form of business entity, it was particularly desirable as "a sensible vehicle for family and other closely held businesses" engaged in a variety of activities, including real estate acquisition and development.

¶ 14 As originally enacted, the CLLCA included no provision for derivative actions by members. However, in 2002, as part of a broader overhaul of statutes governing business organizations, the general assembly amended the CLLCA to provide for such actions. *See generally* Robert R. Keatinge & Anthony Van Westrum, *Business Entity Legislation 2002: Filing Procedures and LLC Changes,* 31 Colo. Law. 55 (Nov. 2002).

¶ 15 The 2002 amendments, codified at sections 7–80–713 to –719, C.R.S.2011, address the requirements for maintaining a derivative action and include the provision at issue here, regarding dismissal of such actions. Section 7–80–716 states:

(1) A derivative proceeding commenced pursuant to this part 7 shall be dismissed by the court on motion by the limited liability company if any one of the groups specified in subsection (2) of this section has determined in good faith, after conducting an inquiry upon which the determination is based, that the maintenance of the derivative action is not in the best interests of the limited liability company.

(2)(a) Subject to the requirements of paragraph (b) of this subsection (2), the determination whether the maintenance of the derivative proceeding is in the best interests of the limited liability company shall be made by the independent manager of the limited liability company or, where there is more than one such manager, by a majority of said managers; except that, if there is no independent manager of the limited liability company or if the majority of such managers is unable to make the determination, the determination shall be made by a majority of the independent members of the limited liability company.

(b) If the determination is not made pursuant to paragraph (a) of this subsection (2), the determination shall be made by the person, or, in the case of more than one person, by a majority of such persons, sitting upon a panel of one or more persons appointed by a court upon motion filed with the court by the limited liability company for such purposes.

(3) The court shall appoint only independent persons to the panel described in paragraph (b) of subsection (2) of this section.

(4) None of the following shall by itself cause a person not to be considered independent for purposes of subsection (2) of this section:

(a) The naming of the person as a defendant in the derivative proceeding or as a person against whom action is demanded;

(b) The approval by such person of the act being challenged in the derivative proceeding or demand where the act did not result in personal benefit to such person;

(c) The making of the demand pursuant to section 7–80–714 or the commencement of the derivative proceeding pursuant to this section.

(5) Subject to section 7–80–717, a panel appointed by the court pursuant to paragraph (b) of subsection (2) of this section shall have such authority to continue, settle, or discontinue the derivative proceeding as the court may confer upon such panel.

(6) The plaintiff in the derivative proceeding shall have the burden of proving that any of the ·requirements of subsections (1) and (2) of this section have not been met.

¶ 16 Thus, on its face, section 7–80–716 requires a court to dismiss a derivative action against an LLC if any of the individuals or entities described in subsection (2) has determined "in good faith, after conducting an inquiry upon which the determination is based," that maintenance of the derivative action is not in the best interests of the LLC. The decision-makers must be "independent," but they are not deemed to lack independence based solely on the existence of any of the three circumstances enumerated in subsection (4). The burden is on the plaintiff to prove that the decision-makers were not independent, the inquiry was inadequate, or the determination was not made in good faith. *See* 1 Colo. Prac., Methods of Practice § 5:44 (6th ed.).

¶ 17 Section 7–80–716 has not been the subject of any reported appellate decision, and there are no analogous provisions in the Colorado statutes addressing derivative actions against corporations and limited partnerships. Further, although many states have statutes providing for derivative actions against LLCs, and some of these statutes also address dismissal of such derivative actions upon motion by the defendants, *see, e.g.,* Ga.Code Ann. § 14–11–805 (2011); Fla. Stat. Ann. § 608.601; Mich. Comp. Laws Ann. § 450.4512 (West 2011); Miss.Code. Ann. § 79–29–1109 (2011); Neb.Rev.Stat. § 21–168 (2011); N.C. Gen.Stat. Ann. § 57C–8–01 (West 2011); Tex. Bus. Orgs. Code Ann. § 101.458 (West 2011); Wis. Stat. Ann. 180.0744 (West 2011); Wyo. Stat. Ann. § 17–29–905 (2011), we have found no other statute that is identical or substantially identical to Colorado's. Nor does the legislative history shed light on the general assembly's intent in enacting section 7–80–716.[1]

¶ 18 In these circumstances, we must begin with the plain language of the statute and then look to any other relevant authority if the statutory language itself is insufficient to resolve the issues in this appeal. *See Klinger,* 130 P.3d at 1031.

### 2. Determining "independence" and "adequate inquiry" under section 7–80–716

¶ 19 Although section 7–80–716 enumerates circumstances that do not per se establish lack of independence, the statute does not further define "independent" or "inquiry," leaving those determinations to the court. *See* 1 Colo. Prac., Methods of Practice § 5:44. A court must give the terms their plain meaning, and this can include consideration of their dictionary definitions; but if those definitions ˙are insufficient by themselves to resolve the issue, the court should look to case law for guidance in determining whether the statutory requirements for dismissal have been met.

---

**1.** The provisions regarding derivative actions against LLCs, a small portion of the more than 100–page HB 1456, were addressed only briefly at the April 30, 2002, meeting of the House Committee on Business Affairs and Labor. Rep. Williams introduced Robert Keatinge, of the Business Law Section of the Colorado Bar Association. Keatinge testified that the new provisions for derivative actions were similar but not identical to those applicable to corporations, were intended to provide a "safety valve" for unhappy LLC members, and had been inadvertently omitted when the CLLCA was initially adopted. The audible portions of the tape include no discussion at all of the provision for dismissal of derivative actions that is at issue here.

¶ 20 In this case, the parties disagree on the extent to which we may rely on case law addressing dismissal of derivative actions against corporations and limited partnerships. Defendants contend that the law that has developed in those contexts is inapplicable to the particular statutory scheme at issue here. Plaintiff disagrees, arguing that the deferential standard urged by defendants and adopted by the trial court is unworkable and provides no way of determining whether the decision-makers were independent or whether their inquiry was adequate.

¶ 21 As set forth below, we agree that additional standards based on the case law are required to decide issues not addressed in the statute, as long as those standards are not inconsistent with the specific language chosen by the general assembly to apply to dismissal of derivative actions against LLCs. *See* § 7–80–107(1), C.R.S.2011 (directing courts to apply case law on piercing corporate veil to cases where party seeks to hold LLC member personally responsible for LLC's improper actions); *Sheffield*, 211 P.3d at 720 (section 7–80–107(1) does not preclude court from applying common law piercing cases to hold LLC managers, as well as members, personally liable for LLC's actions); *see also Hirsch*, 984 P.2d at 633 n. 8 (looking to cases and rules regarding demand requirements in corporate derivative actions for guidance in determining demand requirements in limited partnership derivative actions).

### a. Whether parties recommending dismissal are "independent"

¶ 22 In ordinary usage, being "independent" includes "not relying on something else: ... being or acting free of the influence of something else: ... not looking to others for one's opinions or for the guidance of one's conduct: not biased by others." *Webster's Third New Int'l Dictionary* 1148 (2002). However, the definition of "independent" does not by itself establish what a court is to consider in determining whether a decision-maker recommending dismissal of a derivative action is independent. We thus turn to case law for further guidance.

### i. Colorado case law

¶ 23 Although no Colorado statutes provide for dismissal of corporate shareholder or limited partner derivative actions upon motion by the defendants, such dismissals are addressed in the case law. In *Hirsch*, a limited partner derivative action, an independent counsel appointed by the trial court had found the derivative claims to be without merit, but the trial court denied the defendants' motion to dismiss based on counsel's report. Relying on case law from other jurisdictions, the Colorado Supreme Court held that the trial court's role in reviewing such a motion "should be limited to inquiring into the independence and good faith" of the person or entity recommending dismissal. *Hirsch*, 984 P.2d at 638. If that party was authorized to act, was independent, and employed reasonable procedures in its analysis, the court was not to second-guess its business judgment in deciding not to pursue the derivative litigation. *Id.*

¶ 24 In *Curtis*, a corporate shareholder derivative action in which the decision whether to seek dismissal had been delegated by the corporation's board of directors to a special litigation committee (SLC), the supreme court again held that the trial court's initial review was limited to determining whether the SLC was disinterested and independent; if it was, and if the SLC employed reasonable procedures in its investigation, the court could not substitute its business judgment for that of the SLC. *Curtis*, 31 P.3d at 151–52.

¶ 25 In *Day*, a division of this court applied *Hirsch* and *Curtis* in a limited partner derivative action, concluding that the SLC was independent and disinterested but that its investigation was inadequate. *Day*, 251 P.3d at 1230. The division also concluded that the burden of persuasion should be imposed on those seeking dismissal based on the SLC's report, noting that there was no "presumption" that the SLC was disinterested or was acting in good faith. *Id.* at 1228–29.

¶ 26 Although *Curtis* observes that "minority shareholders possess a legitimate concern that the SLC's analysis will be tainted by the SLC's allegiance to the director-defendants whose alleged misconduct gave rise to their

claims," 31 P.3d at 152, and *Day* cites authority holding that "the 'yardstick' for measuring an SLC's independence 'must be "like Caesar's wife"—"above reproach," ' " 251 P.3d at 1230 (citing *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1055 (Del.2004)), the Colorado cases do not otherwise address the test for determining independence.

### ii. Cases from other jurisdictions

¶ 27 Standards for assessing the independence of parties recommending dismissal of derivative actions have been addressed in cases from other jurisdictions. Most of these cases arise in the corporate context and address "the most common challenge" to the decision of an SLC: namely, that the committee members are not independent. *See Einhorn v. Culea*, 235 Wis.2d 646, 612 N.W.2d 78, 85 (2000).

■ ¶ 28 The determination of independence is highly fact sensitive and frequently depends on the language of the governing statute, if any. In all cases, however, the fundamental question is whether the SLC member or other decision-maker has any stake in the litigation or any relationship with a defendant that is likely to interfere with his or her ability to exercise an independent, unbiased judgment with respect to the litigation in issue. *See* E. Brodsky & M. Patricia Adamski, *Law of Corporate Officers & Dirs.: Rights, Duties & Liabs.* § 9:23 (2011) (Brodsky); *see also In re Oracle Corp. Derivative Litigation*, 824 A.2d 917, 941–42 (Del.Ch.2003); *Einhorn*, 612 N.W.2d at 89.

■ ¶ 29 The question of independence does not revolve solely around pecuniary interest, but encompasses both "disinterest" (the lack of a personal interest in the challenged transaction) and freedom from influence in favor of the defendants owing to personal or other relationships. Brodsky, § 9:23. We note that these inquiries accord with the plain meaning of "independent," set forth above, as "being or acting free of the influence of something else."

¶ 30 As relevant here, the courts have held that substantial business relationships and close personal or family ties, while not neces-

sarily dispositive, can create a material question of fact as to the independence of the decision-makers. *Id.; see also Hasan v. CleveTrust Realty Investors*, 729 F.2d 372, 379 (6th Cir.1984) (defendants did not establish disinterestedness and good faith of sole SLC member, where his report showed he had several significant business relationships with defendants); *Houle v. Low*, 407 Mass. 810, 556 N.E.2d 51, 58 (1990) (genuine issue of material fact existed regarding independence of SLC member who, although not named as a defendant or financially interested in the challenged transaction, was dependent on individual defendants for her professional advancement); *Einhorn*, 612 N.W.2d at 90–93 (while mere personal or business relationships do not per se preclude finding SLC members independent, remand was required to permit lower court to consider issue of independence, where one member was employee and friend of individual defendant and other members had personal and social relationships with defendant and defendant's wife). In addition, courts are more likely to find an SLC independent if the committee retained counsel who had not represented the individual defendants or the corporation in the past. *Einhorn*, 612 N.W.2d at 90.

### iii. Applicability of case law to dismissals under section 7–80–716

■ ¶ 31 As discussed above, we may look to case law to resolve issues not addressed by section 7–80–716, but may not do so if application of the case law would produce a result inconsistent with the statutory language.

¶ 32 In addressing plaintiff's challenge to the independence and good faith of the LLC members who voted against maintenance of the derivative action, the trial court did not base its decision on standards developed under case law. Rather, it reasoned that section 7–80–716(4), which enumerates three circumstances that do not by themselves establish a lack of independence, allowed it to construe "liberally" the vote and the independent status of the LLC members; that the business and family relationships cited by plaintiff did not show that the members were incapable of voting independently; and

that cases regarding independence of SLCs in the corporate context were "inapplicable and factually inapposite." We conclude that section 7–80–716(4) does not foreclose further analysis, under the case law, of the independence issue.

¶ 33 We note that the LLC derivative action statutes of some other states include provisions which, like section 7–80–716(4), enumerate circumstances that do not by themselves establish a lack of independence. See Brodsky, § 9:23; Ga.Code Ann. § 14–11–805(c); Miss.Code. Ann. § 79–29–1109(3); Wis. Stat. Ann. § 180.0744(3). We find particularly instructive the Wisconsin Supreme Court's discussion of the analogous Wisconsin statutory provision in *Einhorn*. In that case, the lower court had relied on the enumeration of circumstances in section 180.0744(3) as establishing that courts were to adopt a "relaxed, lenient standard for the word 'independent.'" *Einhorn*, 612 N.W.2d at 85. The Wisconsin Supreme Court concluded that, upon a "more nuanced examination" of the statute, the lower court's reliance on section 180.0744(3) for an " 'extremely low threshold' standard" was incorrect. *Id.* at 86. Rather, notwithstanding the specific circumstances enumerated in section 180.0744(3), the statute as a whole "directs a court to examine the characteristics of each member's relationship to a defendant director and the corporation carefully to determine whether the member is independent." *Id.* Because the statute requires judicial adherence to the decision of an independent special litigation committee, and because "[t]he power of a corporate defendant to obtain a dismissal of an action by the ruling of a committee ... selected by the board of directors is unique in the law," the legislature must have intended courts to examine carefully whether members of a special litigation committee are independent. *Id.* at 87.

¶ 34 The Wisconsin court found further support for its conclusion in the legislative history of its statute. While we do not have legislative history available to us, we find the *Einhorn* rationale persuasive in our analysis of the standard for determining independence under section 7–80–716. Like the Wisconsin statute, section 7–80–716(1)—which

uses the mandatory term "shall" ("A derivative proceeding ... shall be dismissed if ...")—requires judicial adherence to the members' determination that maintenance of the derivative action is not in the LLC's best interests. Deference to the substantive decision of the members is required not only under section 7–80–716(1) but also under Colorado case law, discussed above, which directs courts to defer to the business judgment of an independent person or entity recommending dismissal of a corporate or limited partnership derivative action. See *Curtis*, 31 P.3d at 151–52; *Hirsch*, 984 P.2d at 638.

¶ 35 Thus, we conclude that section 7–80–716(4) does not by itself establish a lenient standard of review or permit a court to forgo further careful inquiry into the independence of the persons whose substantive decision will be binding on the court. At the same time, we recognize that, by identifying circumstances that do not alone "cause a person not to be considered independent," the general assembly has indicated that independence in this context is a matter of degree rather than an absolute. We accordingly do not equate the independence inquiry here with the "above reproach" standard of the corporate cases. See *Day*, 251 P.3d at 1230.

¶ 36 There is, however, another portion of section 7–80–716 that may bear on the applicability of the case law on independence discussed above. Section 7–80–716(6) places on the plaintiff the burden of proving that "any of the requirements of subsections (1) and (2) of this section have not been met." Placing the burden of proof on the plaintiff to show lack of independence is inconsistent with the Colorado case law addressing dismissal of derivative proceedings, see *Day*, 251 P.3d at 1228–29, and is unlike the LLC derivative action statutes of other states, which either require the LLC to prove its independence and good faith, see Fla. Stat. Ann. § 608.601(3); Ga.Code Ann. § 14–11–805(a), or divide the burdens of proof between the plaintiff and the LLC, see Mich. Comp. Laws Ann. § 450.4512(2); Miss.Code Ann. § 79–29–1109(5); Tex. Bus. Orgs. Code Ann. § 101.458(b); Wis. Stat. Ann. § 180.0744(5).

¶ 37 Placing the burden on the plaintiff to disprove the existence of the statutory requirements could suggest a legislative intent to afford more deference to the decision-makers or to afford them a presumption of independence, good faith, and adequate inquiry. No language in section 7–80–716 specifically so states, and we have found no legislative history or other authority to support such an inference. However, even assuming this were the general assembly's intent, there is nothing to suggest that the deference was to be unlimited or the presumption irrebuttable. On the contrary, by giving the plaintiff the burden to show that the statutory requirements were not met, the general assembly must have contemplated that there would be circumstances in which the plaintiff could meet that burden.

¶ 38 As discussed above, the statute requires the court to defer to the decision-makers' business judgment and dismiss the action if the statutory requirements are met. This circumstance further supports a conclusion that, even though the burden is on the plaintiff to show that the statutory requirements were not satisfied, the plaintiff should be able to meet his burden by showing that a decision-maker has a stake in the litigation or a relationship with a defendant which would interfere with his or her ability to make an unbiased judgment as to whether dismissal of the derivative action is in the LLC's best interests. *See* Brodsky, § 9:23; *Einhorn,* 612 N.W.2d at 89.

¶ 39 Finally, while we apply the case law standards from the corporate context to the independence question under section 7–80–716, we also recognize that in small LLCs such as those in this case, there is a greater likelihood of business, familial, or personal relationships between the defendants and the decision-makers. As noted, the mere existence of such relationships is not dispositive on the issue of independence. Nevertheless, their presence raises questions as to whether the decision-maker can base his or her decision solely on the best interests of the LLC, without extraneous considerations or influences. *See Einhorn,* 612 N.W.2d at 89; Brodsky, § 9:23. The trial court must decide this issue, based on the facts presented to it,

in LLC derivative actions as in other derivative actions.

¶ 40 In sum, a decision-maker is "independent" within the meaning of section 7–80–716 if he or she has neither a stake in the litigation nor a relationship with a defendant that would preclude making an unbiased judgment as to whether dismissal of the derivative action is in the LLC's best interests. Business, personal, or familial relationships with a defendant raise a question about whether the decision-maker is independent, but they are not dispositive. A court may find, under the facts before it in a given case, that the specific relationship at issue would not interfere with the decisionmaker's independence.

iv. Application to this case

¶ 41 In support of their dismissal motion in this case, defendants appended the minutes of special meetings of the four LLCs (represented as having met separately, at fifteen-minute intervals, over the course of one hour at a single location), establishing that all the attendees except plaintiff had voted that maintenance of the derivative action was not in the companies' best interests. The minutes showed that Eric Bush did not attend the meetings; the other LLC members were present in person or by proxy; and counsel for the LLCs, counsel for plaintiff, and special counsel for the LLCs also were present.

¶ 42 In opposition to defendants' motion, plaintiff argued that the members who made the best interests determination were not independent. He submitted an affidavit attesting that: (1) Michael Young and Douglas Young, members of all four LLCs, are "full brothers" of Eric Bush; (2) the Bush Development website shows Eric Bush as its President, Douglas Young as Executive Vice President of Construction Management, and Michael Young as Chief Operating Officer; (3) another LLC member, Troy Smith, is Vice President of Development at Bush Development; (4) Michael Young paid only $10 for his 15% share in Leetsdale Self Storage, LLC; (5) Scott Crosbie, a member of two of the LLCs, has an office in a building owned

by Bush Development; and (6) Diane Bush, a member of one LLC, is the wife of Eric Bush. Plaintiff also submitted his attorney's affidavit stating, as relevant here, that it would be helpful to obtain discovery, including taking the depositions of Michael Young and Douglas Young to determine their relationships with and financial connections to Bush and Bush Development for the purpose of assessing their independence. The trial court did not allow the requested discovery.

¶ 43 The facts set forth in plaintiff's affidavit showed business and family relationships sufficient to create a material question of fact as to the independence of the LLC members who made the best interests determination. In these circumstances, plaintiff should have been allowed discovery to establish whether the relationships interfered with those members' ability to exercise independent, unbiased judgment regarding maintenance of the derivative action. *See Beam,* 845 A.2d at 1055; *Houle,* 556 N.E.2d at 58–59; C.R.C.P. 56(f). On remand, the trial court is to allow such discovery and then determine the independence issue based on those facts and upon application of the standards set forth here.

### b. The adequacy of the decision-makers' inquiry

¶ 44 Section 7–80–716(1) states that a derivative proceeding against an LLC shall be dismissed on motion if one of the groups specified in the statute has determined "in good faith, after conducting an inquiry upon which the determination is based," that maintenance of the action is not in the LLC's best interests. The statute does not define or qualify "inquiry."

¶ 45 Plaintiff argued in the trial court that, in addition to lacking independence, the LLC members did not "make a reasonable inquiry, if any at all," into the allegations in his complaint. He noted that there was no evidence that Michael Young and Douglas Young did any investigation, and that "there was no report." Plaintiff's counsel requested leave in his affidavit to depose Michael Young and Douglas Young regarding any investigation they made concerning the allegations. He also sought to depose any par-

ties on whose investigation the LLC members relied, asserting that the information was relevant to whether the best interests determination was based on a sufficient investigation.

¶ 46 The trial court concluded that (1) the statute did not require a report; (2) the minutes showed that the LLCs' counsel had conducted an inquiry and reported his conclusions to the members; and (3) plaintiff had not met his burden to show that the inquiry was inadequate. The court found no issue of material fact regarding the adequacy of defendants' inquiry and accordingly did not grant plaintiff's request for further discovery on the issue.

¶ 47 We conclude that, while section 7–80–716(1) does not appear to contemplate production of a written report or an investigation as wide-ranging as those required in corporate derivative actions, it nevertheless requires that there be an inquiry producing facts sufficient to enable LLC members to make an informed and good-faith decision on whether maintenance of the derivative action is in the LLC's best interests. The record does not establish whether the inquiry here was sufficient to do so. Accordingly, on remand, plaintiff should be allowed discovery on this issue and the court should then decide, on those facts and under the standards set forth below, whether the LLCs' decision was based on adequate inquiry into plaintiff's allegations.

### i. Case law

¶ 48 Cases from Colorado and elsewhere on corporate or limited partnership derivative actions have addressed the reasonableness of the investigation on which an SLC's best interests determination is based. Although the analyses are highly fact-based and provide no single standard or set of standards for assessing the sufficiency of an investigation, the cases generally agree that the focus of judicial review of this issue should be on the procedures followed rather than on the substantive conclusion reached by the investigation. Under the business judgment rule, the substantive conclusion is not subject to judicial review; however, a court may properly inquire into the adequacy

and appropriateness of the investigative procedures that were used. *See Curtis*, 31 P.3d at 152; *Day*, 251 P.3d at 1230; *see also Auerbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1002–03 (1979) ("[p]roof ... that the investigation has been so restricted in scope, so shallow in execution, or otherwise so [p]ro forma or halfhearted as to constitute a pretext or sham ... would raise questions of good faith or conceivably fraud which would never be shielded by [the business judgment] doctrine"); *see generally* Brodsky, § 9:24.

¶ 49 In *Day*, a limited partnership derivative action to challenge the sale of partnership property to the general partner at a price allegedly far below fair market value, the SLC's independent counsel had prepared a fourteen-page report recommending that the derivative claims be dismissed. The SLC relied on the report without conducting any independent investigation on a crucial issue omitted from the report—namely, the value of the property sold in the insider transaction. The division found the investigation inadequate, explaining:

> It is not our role to consider whether in fact the property was worth more than general partner Rader paid for it.... [But] [t]he SLC's investigation was procedurally inadequate to support any independent determination of the critical issue whether a general partner bought the property at a price that was fair to the partnership as a whole.

*Day*, 251 P.3d at 1231.

¶ 50 To the same effect is *Brewster v. Brewster*, 241 P.3d 357 (Utah Ct.App.2010), an LLC derivative action case decided under a Utah statute requiring dismissal on motion if an independent person or group "determines in good faith after conducting a reasonable inquiry upon which its conclusions are based" that the action is not in the LLC's best interests. *Id.* at 361 (quoting Utah Code Ann. § 16–10a–740(4)(a)). The appellate court held that the trial court had erred when it "failed to identify any unaddressed deficiencies with respect to the reasonableness of the procedures followed by [the accountant] in conducting his review, and instead rejected [the accountant's] conclusions

based on its own notions of what business practices should have been employed." *Id.* at 364.

¶ 51 Although there is no single standard for assessing the adequacy of an inquiry or investigation, courts have identified factors bearing on that determination. The Colorado Supreme Court stated in *Curtis*: "Some of the factors relevant to the adequacy of the committee's investigation may include the length and scope of the investigation, the use of experts, the corporation or defendant's involvement, and the adequacy and reliability of information supplied to the committee." 31 P.3d at 152; *accord Day*, 251 P.3d at 1230. Citing cases from other jurisdictions, Brodsky observes that, to be reasonable, an inquiry must be commensurate in scope with the nature of the issues raised by the complainant. Brodsky, § 9:24.

¶ 52 Brodsky also summarizes the holdings in cases where, as here, the investigation was performed by counsel retained by an SLC or other decision-maker:

> [T]he courts have emphasized the committee's engagement of, and reliance upon, special independent counsel. Thus, where a committee did not retain independent counsel, this omission was noted by the court as additional support for its finding that the committee was not independent. Counsel retained by the committee should be truly independent, that is, without any regular relationship with management or the corporation. Special counsel may appropriately investigate the facts and make recommendations as to the legal aspects of the committee's decision. The committee members should not, however, blindly rely on counsel, and should remain actively involved in the supervision of the investigation and in the evaluation of facts uncovered thereby.... [Claims of improper delegation of responsibility to counsel] have been rejected where the court was satisfied that there was impressive and substantial independent participation by committee members in the decision.

A committee report was not upheld, however, where the committee members

did not join in counsel's investigation except in the most perfunctory manner.

*Id.* (citations omitted).

### ii. Applicability of case law to section 7–80–716

¶ 53 We must next determine the extent to which the case law discussed above should apply to assessing the adequacy of the inquiry mandated under section 7–80–716(1).

¶ 54 We find it significant that, while many of the corporate and limited partnership cases refer to an "investigation," section 7–80–716(1) requires an "inquiry." The dictionary definitions of these terms suggest that an inquiry may be something less thorough than an investigation. Inquiry is defined as "the act or an instance of seeking truth, information, or knowledge about something: examination into facts or principles," and "the act or instance of asking for information: a request for information." *Webster's Third New Int'l Dictionary* 1167 (2002). The same dictionary defines investigation as "the action or process of investigating: detailed examination" and "a searching inquiry." *Id.* at 1189.

¶ 55 Applying the plain meaning of the term chosen by the general assembly persuades us that an inquiry conducted pursuant to section 7–80–716(1) may be less searching and detailed than the investigations described in corporate or limited partnership derivative action cases. Such a construction recognizes that the LLCs to which section 7–80–716 applies may, as here, have fewer members and fewer resources than a large corporation. *Cf. Curtis*, 31 P.3d at 154 ("we are unpersuaded by the court's concern for the approximately $100,000 cost of the SLC process to the corporation"). Under this understanding of what is statutorily required, there may be circumstances in which an LLC with few resources can conduct an adequate inquiry without retaining experts or independent outside counsel, although the lack of

outside counsel may bear on the related issues of the decision-makers' independence and good faith. *See* Brodsky, § 9:24.

¶ 56 We thus conclude that an inquiry under section 7–80–716 may be less searching and detailed than the SLC investigations described in the case law. It does not follow from this, however, that no inquiry is required, or that the trial court may undertake only a cursory review of the inquiry on which the LLC members' determination is based. The general assembly would not have required the best interests determination to be based on an "inquiry" unless it intended such inquiry to give the decision-makers the facts necessary to decide whether maintenance of the derivative action is in the LLC's best interests.

¶ 57 In sum, although no written report is required, and although the members may rely on an independent attorney's bona fide investigation, the record must nevertheless show that the investigation produced information bearing on the substance of plaintiff's allegations and that the members thus had before them sufficient information on which to base a good-faith decision that maintenance of the derivative action was not in the LLCs' best interests.

¶ 58 Because, as set forth above, the record here is insufficient to establish whether these requirements were met, this issue must be remanded to the trial court for resolution based on facts developed by plaintiff in discovery and upon application of the analysis here.[2]

### B. Maintenance of Plaintiff's Nonderivative Claims for Relief

¶ 59 Plaintiff contends that his third claim for relief (for breach of his settlement agreement with Eric Bush), twelfth claim (for access to records of Quebec Plaza LLC), and thirteenth claim (for an accounting with respect to Quebec Plaza) were direct, not deriv-

---

**2.** Section 7–80–716 requires, in addition to independent decision-makers and an adequate inquiry, that the best interests determination be made in "good faith." Although plaintiff alludes to that requirement in his appellate briefs, he makes no separate argument, cites no authorities, and refers to no facts—apart from those

discussed in connection with the independence and adequate inquiry issues—that would call into question the good faith of the LLC members or their counsel. Accordingly, except for the above-referenced authorities stating that an inadequate inquiry may show lack of good faith, we do not address this statutory requirement.

ative, claims, and that he should have been allowed to pursue them notwithstanding the trial court's dismissal of the derivative claims on defendants' motion. We agree as to the third claim only.

¶ 60 Like corporate shareholders and limited partners, LLC members may bring derivative claims to protect the interests of the LLC from the wrongful acts of its managers or controlling members. §§ 7–80–713 to –719, C.R.S.2011; *see Day*, 251 P.3d at 1228. However, a member may assert a direct claim only where he or she has suffered injuries separate and distinct from the injury to the LLC or the other members. *See Adams v. Land Servs., Inc.*, 194 P.3d 429, 434 (Colo.App.2008); *Kim v. Grover C. Coors Trust*, 179 P.3d 86, 89–90 (Colo.App. 2007).

¶ 61 To determine whether a claim is derivative or direct, we must therefore consider, as between the LLC and the plaintiff, "(1) who suffered the alleged harm, and (2) who would receive the benefit of any remedy." *First Horizon Merchant Servs., Inc. v. Wellspring Capital Mgmt., LLC*, 166 P.3d 166, 180 (Colo.App.2007). The court must look to all the facts of the complaint to determine whether a direct claim exists. *Id.*

¶ 62 Although plaintiff stated in his complaint that each of his claims was being asserted by him individually and as a member of the LLCs, he argued in response to defendants' motion to dismiss that his third claim, for breach of the settlement agreement, was a direct claim only, not a derivative claim, and thus not subject to dismissal even if the derivative claims were dismissed. The trial court did not address this contention when it dismissed all the claims upon defendants' motion.

¶ 63 After the court entered its dismissal order, plaintiff filed a "motion for clarification," asserting that his twelfth and thirteenth claims, as well as the third claim, were direct claims and should not have been dismissed. After the notice of appeal was filed, defendants filed a response indicating their willingness to stipulate that the third claim was plaintiff's individual claim, asking the court to reinstate that claim against defen-

dant Eric Bush only, and providing a form order so stating. The court entered the order, but it lacked jurisdiction to do so because the notice of appeal had been filed. *See Molitor v. Anderson*, 795 P.2d 266, 268 (Colo.1990).

¶ 64 We agree that plaintiff's breach of settlement claim is a direct claim and may be maintained regardless of the trial court's decision regarding dismissal of the derivative claims. Although he did not amend his complaint to clarify that this third claim was direct and not derivative, defendants were on notice from the substance of his allegations that he was alleging an injury separate and distinct from any injury suffered by the LLCs or the other LLC members. Further, if plaintiff were to prevail on this claim, the relief would go to him personally rather than to the LLCs. *See Kim*, 179 P.3d at 90.

¶ 65 We reach a different conclusion as to plaintiff's twelfth and thirteenth claims, for review of Quebec Plaza records and an accounting. As he did with all his claims, plaintiff, "as an individual and as a member of [the LLCs]," incorporated by reference the preceding paragraphs of the complaint. However, he never alleged that he was asserting claims twelve and thirteen solely in his individual capacity, nor did he provide further factual allegations suggesting that that was his intent. Moreover, as noted, in his response to defendants' motion to dismiss, plaintiff argued that only his third claim for relief was a direct claim, and he did not assert that his twelfth and thirteenth claims were also nonderivative until his postjudgment motion for clarification. In these circumstances, the trial court did not err in declining to reinstate claims twelve and thirteen.

## IV. Conclusion

¶ 66 The judgment is affirmed to the extent that it does not reinstate plaintiff's twelfth and thirteenth claims as direct claims. The judgment is otherwise reversed, and the case is remanded to the trial court with directions to (1) grant plaintiff's requested discovery and reconsider defendants' motion to dismiss the derivative claims in accordance with the views expressed here,

and (2) permit plaintiff to reassert his breach of settlement agreement claim as a direct claim if he chooses to do so.

WEBB and GABRIEL, JJ., concur.