133 Nev., Advance Opinion 61

# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF DISH NETWORK
DERIVATIVE LITIGATION.

No. 69012

---

JACKSONVILLE POLICE AND FIRE
PENSION FUND,
Appellant,
vs.
GEORGE R. BROKAW; CHARLES M.
LILLIS; TOM A. ORTOLF; CHARLES
W. ERGEN; CANTEY M. ERGEN;
JAMES DEFRANCO; DAVID K.
MOSKOWITZ; CARL E. VOGEL;
THOMAS A. CULLEN; KYLE J. KISER;
AND R. STANTON DODGE,
Respondents.

FILED

SEP 14 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

---

IN THE MATTER OF DISH NETWORK
DERIVATIVE LITIGATION.

No. 69729

---

JACKSONVILLE POLICE AND FIRE
PENSION FUND,
Appellant,
vs.
GEORGE R. BROKAW; CHARLES M.
LILLIS; TOM A. ORTOLF; CHARLES
W. ERGEN; CANTEY M. ERGEN;
JAMES DEFRANCO; DAVID K.
MOSKOWITZ; CARL E. VOGEL;
THOMAS A. CULLEN; KYLE J. KISER;
AND R. STANTON DODGE,
Respondents.

Consolidated appeals from a district court order of dismissal after the district court deferred to a special litigation committee's determination that the derivative claims should be dismissed and an order

17-31069

awarding costs. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

*Affirmed in part and vacated in part.*

McDonald Carano, LLP, and Jeffrey A. Silvestri and Amanda C. Yen, Las Vegas, and Debbie A. Leonard, Reno; Bernstein Litowitz Berger & Grossman, LLP, and Mark Lebovitch, Jeroen Van Kwawegen, and Adam D. Hollander, New York, New York,
for Appellant.

Holland & Hart, LLP, and J. Stephen Peek, Robert J. Cassity, and David J. Freeman, Las Vegas, and Holly Stein Sollod, Denver, Colorado; Young, Conway, Stargatt & Taylor, LLP, and David C. McBride, Robert S. Brady, C. Barr Flinn, and Emily V. Burton, Wilmington, Delaware,
for Respondents, George R. Brokaw, Charles M. Lillis, and Tom A. Ortolf.

Reisman Sorokac and Joshua H. Reisman and Robert R. Warns III, Las Vegas; Willkie, Farr & Gallagher, LLP, and James C. Dugan, Tariq Mundiya, and Mary K. Warren, New York, New York,
for Respondents, Charles W. Ergen and Cantey M. Ergen.

Pisanelli Bice, PLLC, and James J. Pisanelli and Debra L. Spinelli, Las Vegas; Sidley Austin, LLP, and Bruce R. Braun, Chicago, Illinois,
for Respondents Thomas A. Cullen, Kyle J. Kiser, and R. Stanton Dodge.

Brownstein Hyatt Farber Schreck, LLP, and Maximilien D. Fetaz, Kirk B. Lenhard, and Jeffrey S. Rugg, Las Vegas; Sullivan & Cromwell, LLP, and Brian T. Frawley, New York, New York,
for Respondents James DeFranco, David K. Moskowitz, Carl E. Vogel, and (in their capacity as Director Defendants) George R. Bokaw, Charles M. Lillis, and Tom A. Ortolf.

---

BEFORE THE COURT EN BANC.

SUPREME COURT
OF
NEVADA



(O) 1947A

*OPINION*

By the Court, GIBBONS, J.:

Appellant Jacksonville Police and Fire Pension Fund (Jacksonville) brought suit, derivatively on behalf of DISH Network Corporation, challenging certain conduct of, among others, Charles W. Ergen, the chairman and chief executive officer of DISH. To investigate Jacksonville's claims, DISH's board of directors (the Board) created a Special Litigation Committee (the SLC), respondent in this matter. After the SLC concluded it was not in DISH's best interest to pursue Jacksonville's derivative claims, the district court deferred to the SLC's decision, dismissed the complaint, and awarded costs to the SLC.

In these consolidated appeals, we address the appropriate legal standard for a district court's consideration of an SLC's motion to defer to the SLC's recommendation that derivative claims should be dismissed because pursuing those claims would not be in the company's best interest. In doing so, we adopt the standard set forth in *Auerbach v. Bennett*, 393 N.E.2d 994 (N.Y. 1979), and conclude that the district court did not abuse its discretion in determining that the SLC was independent based upon its voting structure, which required an independent member's affirmative vote in order for any resolution of the SLC to have effect, and that the SLC conducted a good-faith and thorough investigation. We therefore affirm the district court's order granting the SLC's motion to defer and dismissing the complaint. With respect to costs, we affirm the district court's awards for electronic discovery costs and photocopying and scanning costs, but vacate the award for teleconference costs because we conclude that the district court lacked justifying documentation.

 

## FACTS AND PROCEDURAL HISTORY

While we recognize that the underlying litigation and related proceedings involve extensive, complex, and contested facts, *see, e.g., In re LightSquared Inc.*, 511 B.R. 253, 265-314 (Bankr. S.D.N.Y. 2014), none of the issues before us concern the substantive merits of Jacksonville's claims or the SLC's determinations.[1] Accordingly, we briefly summarize the events leading up to our review and focus on the facts most pertinent to the disposition of the instant consolidated appeals—i.e., the SLC's formation and investigation.

### Background summary

This case arises out of Ergen's purchases of secured debt of LightSquared L.P. and DISH's efforts to acquire LightSquared's assets after Ergen's purchases. Challenging this conduct, DISH stockholder Jacksonville brought claims for breach of loyalty and unjust enrichment against Ergen, and claims for breach of loyalty against DISH's Board and officers. LightSquared filed for Chapter 11 bankruptcy with approximately $1.7 billion face amount of secured debt outstanding. The secured debt is governed by a credit agreement, which lists DISH and Echostar Corporation, an entity controlled by Ergen, as disqualified companies such that neither can be an eligible assignee of the debt.

From April 2012 to April 2013, Ergen, through SP Special Opportunities, LLC (SPSO), another entity that he owns and controls, and using funds provided from his personal assets, purchased approximately

---

[1]We note that no party to the instant matter has raised issue preclusion with respect to the related bankruptcy proceedings. Further, we note that only the respondents who are members of the SLC filed an answering brief and participated in these consolidated appeals.

 

$850 million of LightSquared's secured debt for a total purchase price of approximately $690 million. Ergen later informed DISH and Echostar of the opportunity to acquire LightSquared's assets through its bankruptcy. Ergen also disclosed to DISH's Board that he purchased LightSquared debt.

At a meeting held several days later and without the Ergens, the Board created the Special Transaction Committee (the STC) to determine whether DISH would pursue the LightSquared opportunity. On July 21, 2013, the STC recommended that DISH submit a bid, and the STC was dissolved that same day. Based on the STC's recommendation, on July 23, 2013, DISH submitted a $2.22 billion bid to acquire LightSquared's assets as part of a bankruptcy plan. However, on December 23, 2013, the Board authorized the termination of the bid.

*Derivative litigation*

Before DISH terminated its bid, on August 9, 2013, Jacksonville instituted the instant derivative litigation. Originally, Jacksonville brought certain claims for breach of loyalty and unjust enrichment against Ergen and other directors and officers arising from, among other things, (1) Ergen's purchases, through SPSO, of LightSquared's secured debt; (2) the STC established by the Board to consider a bid for wireless spectrum and related assets of LightSquared; and (3) DISH's subsequent bid for the LightSquared assets. Jacksonville argued that Ergen's purchases of LightSquared's secured debt usurped corporate opportunities belonging to DISH, Ergen pressured DISH to make the bid in order to ensure that LightSquared could use the proceeds of DISH's bid to pay off Ergen's secured debt at substantial profit to Ergen, and Ergen interfered with the STC before it recommended the bid to the Board.

After DISH terminated its bid, Jacksonville filed its second amended complaint, adding as defendants the SLC members, among others, and further alleging the bid would have been beneficial to DISH and should not have been terminated. Thus, in addition to the events listed above, Jacksonville's claims stemmed from the withdrawal of DISH's bid and the establishment of the SLC.

*The SLC's formation and investigation*

On September 18, 2013, the Board created the SLC to investigate Jacksonville's claims and determine whether it was in the company's best interest to pursue the claims. The SLC initially consisted of long-standing board member Tom A. Ortolf and George R. Brokaw, who became a board member on October 7, 2013. In its status report to the court the following month, Jacksonville noted the flawed composition of the SLC, arguing Ortolf and Brokaw had close personal and professional ties to Ergen. On December 9, 2013, Charles M. Lillis, who became a board member on November 5, 2013, was added to the SLC. The resolutions appointing Lillis to the SLC made it so that the SLC could not act without Lillis's approval.

Ultimately, the SLC determined that it was not in DISH's best interest to pursue the litigation. As detailed in its report of over 300 pages, the SLC determined that the claims lacked merit, DISH could not prevail on the claims, and pursuit of the claims would be costly to DISH and undermine DISH's defenses asserted in other litigation. The SLC decided that the claims should be dismissed.

The SLC submitted its report to the district court on October 24, 2014. In the time leading up to the SLC's report, the district court considered multiple motions, status reports, and status conferences surrounding DISH's efforts to acquire LightSquared's assets, the events in

LightSquared's bankruptcy and the adversary proceeding, and the derivative claims.

*The SLC's motion to defer*

After investigating for almost a year, the SLC moved the court to defer to the SLC's determination that the claims should be dismissed. After an initial hearing and reviewing the SLC's report and initial briefing on the motion to defer, the district court granted Jacksonville discovery pursuant to NRCP 56(f) regarding the SLC's independence and the thoroughness of the SLC's investigation. After discovery, the district court ordered supplemental briefing and oral argument. Ultimately, the district court granted the SLC's motion to defer, dismissing the case with prejudice, and Jacksonville timely appealed.

*Costs*

After the SLC filed its memorandum of costs, Jacksonville filed a motion to retax, challenging, in relevant part, costs sought by the SLC for electronic discovery, photocopying and scanning, and teleconferences. The district court awarded to the SLC $151,178.32 for "costs of the electronic discovery vendors utilized by the SLC" because pursuant to NRS 18.005(17), the costs "were a reasonable and necessary expense incurred in connection with the action as a method by which to acquire and process the information that was required to be produced in response to [Jacksonville]'s NRCP 56(f) discovery requests." Additionally, the district court awarded to the SLC costs for photocopying and scanning under NRS 18.005(12), and for teleconference calls under NRS 18.005(13). Ultimately, the SLC was awarded $186,100.60 in costs, plus interest. Again, Jacksonville timely appealed, and this court consolidated the two appeals.

## DISCUSSION

These consolidated appeals primarily concern the district court's granting the SLC's motion to defer to its decision to dismiss Jacksonville's derivative complaint. An SLC has the power to terminate a derivative complaint to the extent allowed by the state of incorporation. *See Burks v. Lasker*, 441 U.S. 471, 486 (1979). Although this court has yet to address this issue, two principal legal standards exist for considering an SLC's request to dismiss derivative claims. *See generally Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981); *Auerbach v. Bennett*, 393 N.E.2d 994 (N.Y. 1979). Under both tests, the district court determines whether the SLC is independent and conducted a good-faith, thorough investigation. *Zapata*, 430 A.2d at 788; *Auerbach*, 393 N.E.2d at 1001, 1002-03; *see also Curtis v. Nevens*, 31 P.3d 146, 152 (Colo. 2001) (indicating that both tests recognize "trial courts are well equipped to evaluate the methodology and procedures best suited to conduct such an investigation"). The *Auerbach* test stops there—so long as the SLC is independent and employed reasonable procedures in its analysis, courts following this approach "may not second-guess [the SLC's] business judgment in deciding not to pursue the derivative litigation." *Hirsch v. Jones Intercable, Inc.*, 984 P.2d 629, 638 (Colo. 1999) (following *Auerbach*). The *Zapata* approach, on the other hand, adds a second step—if the court finds the SLC "was independent and showed reasonable bases for good faith findings and recommendations, the [c]ourt may proceed, in its discretion, to . . . determine, applying its own independent business judgment, whether the motion should be granted." *Zapata*, 430 A.2d at 789. Because Nevada's business judgment rule "prevents courts from 'substitut[ing] [their] own notions of what is or is not sound business judgment,'" *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 133 Nev.,

Adv. Op. 52, 399 P.3d 334, 344 (2017) (alterations in original) (quoting *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971)), we conclude that *Auerbach* is the better approach. *See Lewis v. Anderson*, 615 F.2d 778, 783 (9th Cir. 1979) ("[T]he good faith exercise of business judgment by a special litigation committee of disinterested directors is immune to attack by shareholders or the courts."); *Miller v. Bargaheiser*, 591 N.E.2d 1339, 1342-43 (Ohio Ct. App. 1990) (finding *Zapata*'s "degree of scrutiny to be irreconcilable with the spirit of the business judgment rule").

Accordingly, and as a matter of first impression, we hold that courts should defer to the business judgment of an SLC that is empowered to determine whether pursuing a derivative suit is in the best interest of a company where the SLC is independent and conducts a good-faith, thorough investigation. *See Auerbach*, 393 N.E.2d at 996 ("While the substantive aspects of a decision to terminate a shareholders' derivative action against defendant corporate directors made by a committee of disinterested directors appointed by the corporation's board of directors are beyond judicial inquiry under the business judgment doctrine, the court may inquire as to the disinterested independence of the members of that committee and as to the appropriateness and sufficiency of the investigative procedures chosen and pursued by the committee."); *see also Curtis*, 31 P.3d at 152 (heeding "the cautionary words expressed by the New York Court of Appeals in *Auerbach*, that a court 'may not under the guise of consideration of such factors trespass in the domain of business judgment.'" (quoting *Auerbach*, 393 N.E.2d at 1002)). Additionally, we conclude that the application of this standard is a matter left to the sound discretion of the district court, and absent an abuse of that discretion, the district court's rulings will not be disturbed on appeal. *See, e.g.,*

*Kokocinski ex rel. Medtronic, Inc. v. Collins*, 850 F.3d 354, 361-62 (8th Cir. 2017); *Miller*, 591 N.E.2d at 1343; *see also Weddell v. H2O, Inc.*, 128 Nev. 94, 101, 271 P.3d 743, 748 (2012) ("The district court's factual findings . . . are given deference and will be upheld if not clearly erroneous and if supported by substantial evidence." (quoting *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009))).[2]

---

[2]Jacksonville and our dissenting colleague argue that de novo review is required, analogizing to the standards of review applicable to summary judgment motions under NRCP 56 and motions to dismiss under NRCP 12(b)(6). Unlike a motion for summary judgment or to dismiss, however, the district court's review of an SLC's motion under *Auerbach* does not concern the adequacy of the pleadings or the merits of the derivative suit. Rather, the standard we adopt from *Auerbach* involves assessing the weight and credibility of the evidence, and reaching conclusions that depend greatly on factual determinations. Such fact-intensive legal standards are appropriately reviewed deferentially,

> particularly where: (1) the district court is better positioned than the reviewing court to decide the issue because of its familiarity with the evidence—in such instances the normal "law-clarifying benefits" of the circuit courts will not be advanced with more searching review; and (2) the facts of each case are of a "multifarious, fleeting, special, [and] narrow" nature resulting in close calls, so as not to be susceptible of "useful generalization."

*Kokocinski*, 850 F.3d at 361 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-05 (1990)); *see also Allied Ready Mix Co. ex rel. Mattingly v. Allen*, 994 S.W.2d 4, 9 (Ky. Ct. App. 1998) ("The record overall supports the trial court's findings of good faith, reasonableness and independence on the part of the special litigation committees. We decline to disturb its findings."). Therefore, we disagree with the parties' and our dissenting colleague's arguments regarding standards applicable to summary judgment proceedings.

*The district court did not abuse its discretion in deferring to the SLC's decision and dismissing the complaint*

Jacksonville argues that the district court made numerous reversible errors in evaluating the independence and good faith of the SLC. We disagree.

Pursuant to *Auerbach*, 393 N.E.2d at 996, and consistent with *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 645, 137 P.3d 1171, 1187 (2006), and *In re AMERCO Derivative Litig.*, 127 Nev. 196, 222, 252 P.3d 681, 700 (2011), a shareholder must not be permitted to proceed with derivative litigation after an SLC requests dismissal, unless and until the district court determines at an evidentiary hearing that the SLC lacked independence or failed to conduct a thorough investigation in good faith. Here, the district court's hearing on the SLC's motion, which followed Jacksonville's discovery into the SLC's independence and good faith, was sufficient to constitute an evidentiary hearing because the district court and parties relied, at least in part, on deposition testimony.[3] *See* NRCP

---

[3]Our dissenting colleague asserts that "the district court did not conduct an evidentiary hearing, but decided the motion on written submissions." However, the record demonstrates that Jacksonville submitted with its supplemental briefing the evidence it obtained through discovery, including the deposition testimony of each SLC member. At the subsequent hearing, Jacksonville also quoted from the deposition transcripts, among other evidence, in illustrative slides it presented to the district court—Jacksonville did not request a more formal proceeding nor object to the lack thereof. Thus, the district court received evidence, heard arguments on the evidence, and considered the evidence in granting the SLC's motion.

Additionally, we note that evidence need not be in a particular format to qualify as evidence—testimony is evidence whether it is given in court or a deposition. *See Evidence*, Black's Law Dictionary (10th ed. 2014). Indeed, deposition proceedings involve the same procedures

*continued on next page...*

43(c). Based on the evidence before it, the district court ultimately found that the SLC was independent due to its voting structure, which required an affirmative vote by Lillis, an independent member, in order for any resolution of the SLC to have effect, and that the SLC conducted a good-faith and thorough investigation. While the SLC, as the party moving for dismissal, bears the burden of proof and is entitled to no presumption, the district court arrived at its conclusions without explicitly requiring Jacksonville to bear the burden of proof or presuming the SLC's independence and good faith. Accordingly, for the reasons discussed below, we conclude that the district court did not abuse its discretion in granting the SLC's motion and dismissing the complaint.

*Independence*

Jacksonville maintains that the district court erred by applying the test used in pre-suit demand futility cases, thereby presuming the SLC's independence and good-faith, placing the burden of proof on Jacksonville to overcome that presumption, and limiting its consideration of the SLC's independence to financial independence. We disagree.

The independence standard that applies to directors in the demand-futility context is equally applicable to determine whether an SLC is independent. *See, e.g., In re ITT Derivative Litig.*, 932 N.E.2d 664, 666 (Ind. 2010) ("[T]he same standard [applies] for showing 'lack of disinterestedness' both as to the composition of special board

---

*...continued*
followed in court, including the ability to cross-examine the witness or object to a question or answer. Accordingly, we disagree with our dissenting colleague's conclusion that there was no evidentiary hearing.

committees . . . and to the requirement that a shareholder must make a demand that the corporation's board act unless the demand would be futile.").[4] In the demand-futility context, courts look "at 'whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations,' such that it could 'properly exercise[ ] its independent and disinterested business judgment in responding to a demand.'" *Shoen*, 122 Nev. at 639, 137 P.3d at 1183 (alteration in original) (quoting *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)). Likewise, in considering whether an SLC properly exercised its independent business judgment in determining that litigation would not be in the company's best interest, courts should assess whether

---

[4]Our dissenting colleague implies that our reliance on this case is misplaced. However, while *In re ITT Derivative Litigation* concerns corporation statutes that do not exist in Nevada, the Indiana Business Corporation Law was "largely modeled" after the Model Business Corporation Act. *Id.* at 667. Because the Model Business Corporation Act builds on the law relating to SLCs developed by numerous states, we are informed by the caselaw of other states. *See* 2 Model Bus. Corp. Act Ann. § 7.44 cmt. at 7-341 (Am. Bar Ass'n 2011). Accordingly, while Indiana's corporation statutes do not contemplate the burden-shifting scheme we discuss *infra*, the case is nonetheless relevant to the proposition for which it is cited because it treats director independence the same in both the demand-futility and SLC contexts. *See also Booth Family Tr. v. Jeffries*, 640 F.3d 134, 149 n.2 (6th Cir. 2011) (Griffin, J., dissenting) (noting that "Delaware courts consistently look to demand futility cases in addressing the issue of SLC independence"); *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, No. 06 Civ. 688(SWK), 2008 WL 2941174, at *8 & n.7 (S.D.N.Y. July 30, 2008) (citing to cases involving demand excusal); *London v. Tyrell*, No. 3321-CC, 2010 WL 877528, at *12 (Del. Ch. Mar. 11, 2010) (explaining that the inquiry into an SLC's independence is often "informed by case law addressing independence in the pre-suit demand context and vice-versa"); *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 938-39 (Del. Ch. 2003) (citing to cases involving demand excusal).

any improper influences prevented the SLC from impartially considering the merits of a derivative suit before recommending it be dismissed.

However, while a court may appropriately rely on cases in the pre-suit demand context for the independence inquiry, it should not presume an SLC to be independent nor require the derivative plaintiff to bear the burden of proof. *See Hasan v. CleveTrust Realty Inv'rs*, 729 F.2d 372, 376 (6th Cir. 1984) ("Neither the *Auerbach* approach nor the *Zapata* approach allows a reviewing court to extend to the members of a special litigation committee the presumption of good faith and disinterestedness. As the *Auerbach* court recognized, the policies of the business judgment rule do not protect from judicial scrutiny the complexion and procedures of a special litigation committee."); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1055 (Del. 2004) ("Unlike the demand-excusal context, where the board is presumed to be independent, the SLC has the burden of establishing its own independence by a yardstick that must be 'like Caesar's wife'—'above reproach.' Moreover, unlike the presuit demand context, the SLC analysis contemplates not only a shift in the burden of persuasion but also the availability of discovery into various issues, including independence." (internal footnotes omitted) (quoting *Lewis v. Fuqua*, 502 A.2d 962, 967 (Del. Ch. 1985))). Thus, the formula for evaluating the independence of an SLC is still consistent with that which pertains in pre-suit demand cases, but the SLC is entitled to no presumption and bears the burden of proof.

Additionally, there is no exhaustive list of factors to be considered in evaluating independence. A lack of independence or disinterestedness may exist where the facts show "that the directors' execution of their duties is unduly influenced," or "that the majority is

beholden to directors who would be liable or for other reasons is unable to consider a demand on its merits." *Shoen*, 122 Nev. at 639, 137 P.3d at 1183 (internal quotation marks and footnote omitted). "Additionally, director interestedness can be demonstrated through alleged facts indicating that 'a majority of the board members would be materially affected either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders.'" *AMERCO*, 127 Nev. at 219, 252 P.3d at 698 (alteration in original) (internal quotation marks omitted) (quoting *Shoen*, 122 Nev. at 639, 137 P.3d at 1183). These same factors, among others, can and should be considered in assessing the independence of an SLC. Indeed, citing to cases evaluating the independence of directors in the demand-futility context and of SLC members, this court has "note[d] that, depending on the circumstances, allegations of close familial ties might suffice to show interestedness or partiality." *Shoen*, 122 Nev. at 639 n.56, 137 P.3d at 1183 n.56 (citing *In re Oracle Corp. Derivative Litig.*, 824 A.2d at 937-38). Thus, the district court's independence inquiry is not limited to financial independence, and the relevant factors may be determined on a case-by-case basis.

In the instant case, the district court did not abuse its discretion when it relied on caselaw in the demand-futility context to support its conclusion that the SLC was independent. Although the SLC, as the party moving for dismissal, bore the burden of proof, the district court did not explicitly assign to Jacksonville the burden of proof nor did it explicitly apply a presumption in favor of the SLC. Rather, it acknowledged that the parties disputed whether a presumption applied and ultimately reached its conclusions "irrespective of which party bears the burden." Furthermore, the record on appeal suggests the district court

*focused* its inquiry on the SLC members' financial independence, but does not clearly indicate the district court *limited* its inquiry to the same. As such, we conclude that Jacksonville's arguments regarding demand-futility standards and financial independence lack merit.

Jacksonville also argues that the district court erred by concluding the SLC was independent because two of the three members were not independent. We disagree.

When the SLC was established, it consisted of only two members—Ortolf and Brokaw, both of whom maintain close, personal relationships with Ergen and Ergen's family. For instance, emails between Ortolf and Cantey Ergen, Ergen's wife, sent days before the SLC report was finalized refer to "love and friendship" and their being "good friends," Ortolf's children have worked for DISH, Ergen's daughter refers to Ortolf as "Uncle Tom," and the Ortolfs have vacationed with the Ergens. In addition, Cantey Ergen is Brokaw's son's godmother, the Brokaws and Ergens have vacationed together, attended family dinners, and celebrated birthdays together, and two days after the SLC was formed, Cantey Ergen asked if she could sleep at the Brokaw's with a child and grandchild while visiting New York. While "business, social, and more remote family relationships are not disqualifying, without more," *AMERCO*, 127 Nev. at 232, 252 P.3d at 706 (Pickering, J., concurring in part and dissenting in part), Ortolf and Brokaw's personal and professional ties with Ergen represent the type of improper influences that could inhibit the proper exercise of independent business judgment.

However, Jacksonville challenged the SLC's flawed composition based on Ortolf and Brokaw's personal and professional ties to Ergen and Ergen's family just weeks after the SLC was established. To

address Jacksonville's concerns about the SLC's ability to act independently, Lillis was added to the SLC. Nonetheless, Jacksonville again raised the issue of independence in response to the SLC's motion to defer, and before ruling on the motion, the district court granted Jacksonville discovery into the SLC's independence and good faith. Ultimately, the district court found Lillis to be independent, and based on Lillis's independence *and* the SLC's voting structure, the district court determined that the SLC was independent too.

Unlike Ortolf and Brokaw's ties to the Ergens, the affiliations that Jacksonville challenges between Lillis and senior DISH executive Thomas A. Cullen are not substantial enough to undermine Lillis's independence. Jacksonville does not challenge the district court's finding that "[d]uring the relevant time period, Lillis had no financial or business connection to any defendant other than his service on the DISH Board." Rather, Jacksonville focuses on the facts that Lillis and Cullen have worked together in the past and see each other socially once or twice per year. Without more, these business and social affiliations are not disqualifying. *See AMERCO*, 127 Nev. at 232, 252 P.3d at 706 (Pickering, J., concurring in part and dissenting in part). Therefore, we conclude that the district court did not abuse its discretion in concluding that Lillis was independent.

Once Lillis was added in response to Jacksonville's raising the issue of independence, the SLC could not act without Lillis's approval. The resolutions appointing Lillis to the SLC provided that "any and all actions or determinations of the [SLC] . . . must include the affirmative vote of Mr. Lillis and at least one (1) other committee member in order to constitute a valid and final action or determination of the SLC." Similar

to cases involving two-person committees, Lillis's independence ensured the independence of the SLC as a whole because the SLC could not act without Lillis's affirmative vote. *See, e.g., Strougo ex rel. The Brazil Fund, Inc. v. Padegs*, 27 F. Supp. 2d 442, 450 n.3 (S.D.N.Y. 1998) (indicating that where only one director was needed to form an SLC, if one of the two SLC members lacked some degree of independence, "such a finding would not deprive the SLC as a whole of its independence"); *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1442 (N.D. Cal. 1994) (holding that even if one SLC member had "some alleged interest," since he was not the only member of the SLC, there was "nothing to indicate that the SLC's judgment was tainted in any way"); *Johnson v. Hui*, 811 F. Supp. 479, 487 (N.D. Cal. 1991) ("[E]ven if the evidence suggests that [one SLC member] is tainted to some degree, this taint does not rise to the level where the Court should conclude that the SLC is tainted. [The SLC member in question] is not the only member of the SLC, and there is no indication that the objectivity of [the other SLC member] or committee counsel were overborne by [his] arguments or conduct . . . .").[5]  Therefore, despite Ortolf and Brokaw's

---

[5]Our dissenting colleague implies that our reliance on *Strougo, Oracle,* and *Johnson* is misplaced because those courts offered their alternative holdings only after determining that the challenged SLC member was sufficiently independent. However, while the caselaw does not account for the unique facts of the instant case, we do not read *Strougo, Oracle,* and *Johnson* to require a finding that Ortolf and Brokaw are independent before considering the SLC's voting structure. Based on Lillis's independence and voting power, our conclusion that Ortolf and Brokaw's ties to the Ergens *could* inhibit their independent business judgment does "not deprive the SLC as a whole of its independence." *Strougo*, 27 F. Supp. 2d at 450 n.3. There is no evidence suggesting that Lillis's objectivity was "overborne by the arguments or conduct of" Ortolf

*continued on next page...*

relationships with the Ergens, we conclude that the district court did not abuse its discretion in concluding that the SLC was independent based on Lillis's independence and the SLC's voting structure.

*Good-faith and thorough investigation*

Jacksonville next argues that the district court erred in determining the SLC conducted a good-faith, thorough investigation. We disagree.

In accordance with the business judgment rule, courts can "inquir[e] into the procedural indicia of whether the directors resorted in good faith to an informed decisionmaking process." *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 133 Nev., Adv. Op. 52, 399 P.3d 334, 343 (2017) (quoting *WLR Foods, Inc. v. Tyson Foods, Inc.*, 857 F. Supp. 492, 494 (W.D. Va. 1994)) (setting forth the factors for considering whether a director acted in good faith). The inquiry into whether the SLC made its determination in good faith and on an informed basis "focuses on the process used by the SLC, rather than the substantive outcome of the process. Courts look to indicia of the SLC's investigatory thoroughness, such as what documents were reviewed and which witnesses interviewed." *Sarnacki v. Golden*, 778 F.3d 217, 224 (1st Cir. 2015) (internal citations omitted).

> Proof, however, that the investigation has been so restricted in scope, so shallow in execution, or otherwise so *pro forma* or halfhearted as to constitute a pretext or sham, consistent with the principles underlying the application of the

---

*...continued*

and Brokaw, *Johnson*, 811 F. Supp. at 487, or in any way "affected by [their] participation," *Oracle*, 852 F. Supp. at 1442.

SUPREME COURT
OF
NEVADA

(O) 1947A

19

> business judgment doctrine, would raise questions of good faith or conceivably fraud which would never be shielded by that doctrine.

*Auerbach v. Bennett*, 393 N.E.2d 994, 1003 (N.Y. 1979).

Here, the SLC's investigation, which was comprehensive by any objective measure, included the following: monitoring proceedings and reviewing documents in the LightSquared bankruptcy; conducting 21 interviews of 16 different people, including present respondents and former defendants, DISH senior executives, and regulatory and other technical experts; reviewing hundreds of thousands of pages of relevant documents; and holding more than 17 formal meetings in addition to multiple informal and telephonic meetings. The SLC requested legal advice on the issues raised by the matters under investigation throughout its investigation, and each member invested over 100 hours in the investigation. Accordingly, we conclude that Jacksonville's arguments regarding good faith and the SLC's investigation lack merit and, therefore, the district court did not abuse its discretion in determining that the SLC conducted a good-faith, thorough investigation.

*The district court was within its discretion to award costs for electronic discovery and photocopying and scanning, but abused its discretion in awarding costs for teleconferences*

Jacksonville also challenges the district court's award of costs. Costs may be awarded to a prevailing party as provided in NRS 18.020. The costs allowed under that provision are set forth in NRS 18.005. This court reviews a district court's decision awarding costs for an abuse of discretion. *Logan v. Abe*, 131 Nev., Adv. Op. 31, 350 P.3d 1139, 1144 (2015).

 

*Electronic discovery costs*

Jacksonville first argues that the district court abused its discretion in taxing $151,178.32 in costs for electronic discovery to Jacksonville under NRS 18.005(17) because electronic discovery expenses are not "costs" under NRS 18.005. We disagree.

NRS 18.005(17) defines "costs" as including "[a]ny other reasonable and necessary expense incurred in connection with the action." *See* NRCP 34(d) ("The party requesting that documents be copied must pay the reasonable cost therefor . . . ."). The district court found that the electronic discovery expenses were a reasonable and necessary expense incurred as part of fulfilling the SLC's obligations in response to Jacksonville's NRCP 56(f) discovery requests. We conclude the district court was within its sound discretion to determine that the expenses for the electronic discovery were allowable as costs under NRS 18.005(17).

Jacksonville also maintains that allowing costs for electronic discovery essentially taxed part of the SLC's legal fees to Jacksonville. For support, Jacksonville cites to *Bergmann v. Boyce*, in which this court held that computer research expenses were not recoverable costs because they were "more closely related to [an] attorney's fee than to the kinds of recoverable costs defined in NRS 18.005." 109 Nev. 670, 680, 856 P.2d 560, 567 (1993).[6] However, Jacksonville cites no authority to explain how electronic discovery expenses incurred by the SLC in responding to

_____

[6]We note that NRS 18.005(17) was amended in 1995, after *Bergmann*, and now includes "reasonable and necessary expenses for computerized services for legal research" as costs, but the analytical framework used in *Bergmann* to decide whether an expense falls within the "catchall" definition in NRS 18.005(17) remains good law.

Jacksonville's NRCP 56(f) requests are more akin to attorney fees or computer research expenses than to the reasonable and necessary costs recoverable under NRS 18.005. Unlike the computer research expenses at issue in *Bergmann* that were incurred by the attorneys "as a function of their research of the law," 109 Nev. at 680, 856 P.2d at 567, the district court determined that the costs awarded to the SLC were for electronic discovery conducted by electronic discovery vendors, not the SLC's counsel, "as a method by which to acquire and process the information that was required to be produced in response to [Jacksonville]'s NRCP 56(f) discovery requests." The costs awarded did not include any electronic discovery expenses incurred by the SLC as a function of their investigation of Jacksonville's derivative claims. Therefore, the electronic discovery expenses do not represent part of the SLC's legal fees and, thus, we conclude that Jacksonville is not entitled to relief on this claim.

*Costs for photocopying, scanning, and teleconferences*

Jacksonville also argues that the district court abused its discretion in awarding $18,820.08 in costs for photocopying and scanning under NRS 18.005(12), and $708.02 in costs for teleconferences under NRS 18.005(13). Jacksonville maintains that the SLC initially failed to submit sufficient support to determine that these costs were reasonable and necessary, and only provided a supporting declaration for the photocopying and scanning expenses after Jacksonville raised the deficiencies.

To support an award of costs, justifying documentation must be provided to the district court to "demonstrate how such [claimed costs] were necessary to and incurred in the present action." *Bobby Berosini, Ltd. v. PETA*, 114 Nev. 1348, 1352-53, 971 P.2d 383, 386 (1998). Justifying documentation means "something more than a memorandum of

costs." *Cadle Co. v. Woods & Erickson, LLP*, 131 Nev., Adv. Op. 15, 345 P.3d 1049, 1054 (2015).

We conclude that the SLC provided the district court with sufficient justifying documentation to support the award of costs for photocopying and scanning under NRS 18.005(12). In addition to the memorandum of costs, the SLC provided an itemized list of the photocopying and scanning charges, and a declaration of counsel. The declaration explains how the photocopying expenses were necessary and incurred rather than simply telling the district court that the costs were reasonable and necessary. *See Cadle*, 131 Nev., Adv. Op. 15, 345 P.3d at 1054. As such, the district court did not abuse its discretion in awarding costs for photocopying and scanning.

With respect to the costs awarded for teleconferences under NRS 18.005(13), we conclude that the district court abused its discretion. The SLC provided invoices for the teleconferences in its memorandum of costs, which list the date, time, moderator, number of participants, and cost. However, there was no justifying documentation provided to the court to "*demonstrate* how such fees were necessary to and incurred in the present action." *Cadle*, 131 Nev., Adv. Op. 15, 345 P.3d at 1054 (quoting *Bobby Berosini*, 114 Nev. at 1352-53, 971 P.2d at 386). Therefore, the district court had no evidence on which to judge the reasonableness or necessity of each teleconference and, thus, lacked justifying documentation to award costs for teleconferences.

## CONCLUSION

Accordingly, for the reasons set forth above, we affirm the district court's order granting the SLC's motion to defer and we vacate the

portion of the district court's order awarding costs for teleconferences because it lacked justifying documentation.[7]

_____, J.
Gibbons

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____

[7]We have considered the parties' remaining arguments and conclude they lack merit.

PICKERING, J., concurring in part and dissenting in part:

While I agree with my colleagues that the New York approach taken in *Auerbach v. Bennett*, 393 N.E.2d 994 (N.Y. 1979), to dismissal of a shareholder derivative action on motion of a special litigation committee better fits Nevada law than the Delaware approach laid out in *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981), I disagree with the overly deferential version of *Auerbach* they devise. As I read *Auerbach*, the district court committed legal error when it dismissed this shareholder derivative action on motion of the DISH special litigation committee (SLC), given the genuine issues of material fact the majority acknowledges exist respecting the SLC's independence. This is a legal determination, not a factual one, so de novo review applies. Reviewed de novo, the district court's order of dismissal should be reversed, not affirmed, and the costs award vacated accordingly. For these reasons, though I concur in the decision to adopt *Auerbach* and the partial reversal of the costs award, I otherwise respectfully dissent.

## I.

### A.

A claim by a corporation against its current or former directors for breach of duty belongs to the corporation, not its shareholders. *Auerbach*, 393 N.E.2d at 1000. Ordinarily, the decision to sue—or not to sue—rests with the board of directors, in their business judgment. *United Copper Sec. Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263-64 (1917); *see* 13 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 5963, at 60-61 (2013). But when the claim is against one or more directors for breach of duty owed to the corporation, a conflict arises. If the corporation does not sue on the claim, a shareholder

SUPREME COURT
OF
NEVADA

(O) 1947A

may attempt to do so derivatively, that is, bring the claim on behalf of the corporation. *See* Deborah A. DeMott & David F. Cavers, *Shareholder Derivative Actions Law & Practice* § 1:1 (2016). In response, the conflicted board may create a special litigation committee or SLC composed of independent, disinterested directors to investigate and determine whether it is in the corporation's best interest to pursue the derivative action and, if not, to move to dismiss. At that point, the legal "question to be decided becomes: When, if at all, should an authorized board committee be permitted to cause litigation, properly initiated by a derivative stockholder in his own right, to be dismissed?" *Zapata*, 430 A.2d at 785; *see Auerbach*, 393 N.E.2d at 999-1000 ("the disposition of this case on the merits turns on the proper application of the business judgment doctrine, in particular to the decision of a specially appointed committee of disinterested directors acting on behalf of the board to terminate a shareholders' derivative action").

Today, the corporate law in most states recognizes that a board may appoint a special litigation committee, which committee has the power, at least in certain circumstances, to terminate a shareholder derivative action on motion, not because the action lacks legal merit but because pursuing it is not in the best interests of the corporation. Kenneth B. Davis, Jr., *Structural Bias, Special Litigation Committees, and the Vagaries of Director Independence*, 90 Iowa L. Rev. 1305, 1306 (2005). In states like Nevada without SLC-specific statutes, courts typically address such motions under variants of either New York's *Auerbach* or Delaware's *Zapata* approach. *Id.* New York and Delaware differ in that Delaware adds a second layer of judicial review, but they share the same first principle: A court will not dismiss a shareholder derivative action at

Supreme Court
OF
Nevada

(O) 1947A

2

the behest of an SLC unless the SLC shows that it was "composed of independent and disinterested directors, considered a variety of factors and reached, in good faith, a business judgment that [the] action was not in the best interest of [the corporation]." *Zapata*, 430 A.2d at 787 (internal quotations omitted); *Auerbach*, 393 N.E.2d at 1001, 1002, 1003 (an SLC may terminate a derivative action on motion "only if [its members] possess a disinterested independence and do not stand in a dual relation which prevents an unprejudicial exercise of judgment," can "show that they have pursued their chosen investigative methods in good faith," and have adopted "methodologies and procedures best suited to the conduct of an investigation of facts and the determination of legal liability").[1]

---

[1]In Delaware, if the court "is satisfied under Rule 56 standards that the committee was independent and showed reasonable bases for good faith findings and recommendations, the Court may proceed, in its discretion to the next step," in which, in a demand-excused case, the reviewing court may "determine, applying its own independent business judgment, whether the motion [to terminate the derivative action] should be granted." *Zapata*, 430 A.2d at 789. Delaware is uniquely situated, given its highly specialized chancery courts and rich body of corporate decisional law. As the Colorado Supreme Court noted in choosing *Auerbach* over *Zapata*, "most courts 'are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments,'" making it appropriate to limit "the role of a Colorado trial court in reviewing an SLC's decision regarding derivative litigation . . . to inquiring into the independence and good faith of the committee." *Hirsch v. Jones Intercable, Inc.*, 984 P.2d 629, 638 (Colo. 1999) (quoting *Auerbach*, 393 N.E.2d at 1000). Zapata's second step is also inconsistent with the deference ordinarily extended to a decision by a board or subcommittee of disinterested directors on a matter entrusted to their business judgment. *In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*, 754 N.W.2d 544, 554-59 (Minn. 2008); *see* NRS 78.138(3).

## B.

The most common challenge to an SLC's motion to terminate a derivative action, and the one made here, is that the SLC members lack the independence and disinterestedness required to neutrally determine whether it is in the corporation's best interests to pursue the claims. *See Einhorn v. Culea*, 612 N.W.2d 78, 85 (Wis. 2000). While the SLC procedure "provides the corporation with an important tool to rid itself of meritless or harmful litigation and strike suits," 13 William Meade Fletcher, *supra*, § 6019.50, at 282, it also vests SLC members with "enormous power to seek dismissal of a derivative suit brought against their director-colleagues," *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1055 (Del. 2004), a power rife with the potential for abuse and the cynicism and mistrust such abuse engenders. *See Lewis v. Fuqua*, 502 A.2d 962, 967 (Del. Ch. 1985) ("The only instance in American Jurisprudence where a defendant can free itself from a suit by merely appointing a committee . . . is in the context of a stockholder derivative suit."). To hold the balance between these competing objectives, the sine qua non of both *Auerbach* and *Zapata* is that the SLC demonstrate that its members are independent and disinterested. Edward Brodsky & M. Patricia Adamski, *Law of Corporate Officers and Directors: Rights, Duties and Liabilities*, § 9:34 (2016) ("Whether a particular jurisdiction adopts the New York or Delaware approach to termination of derivative suits, there is general agreement that the decision as to the maintenance of the derivative litigation must be made by 'independent' or 'disinterested' directors.").

To be regarded as independent, an SLC member "does not have to be unacquainted or uninvolved with fellow directors." *London v. Tyrrell*, No. 3321-CC, 2010 WL 877528, at *12 (Del. Ch. March 11, 2010).

But an SLC member is not independent if he or she is *"for any substantial reason,* incapable of making a decision with only the best interests of the corporation in mind." *In re Oracle Corp. Derivative Litig.,* 824 A.2d 917, 920 (Del. Ch. 2003) (internal quotations omitted; emphasis in original). "Denying a fellow director the ability to proceed on a matter important to him may not be easy, but it must, as a general matter, be less difficult than finding that there is reason to believe that the fellow director has committed serious wrongdoing and that a derivative suit should proceed against him." *Id.* at 940. For these reasons,

> the independence inquiry goes beyond determining whether SLC members are under the "domination and control" of an interested director. *Independence can be impaired by lesser affiliations, so long as those affiliations are substantial enough to present a material question of fact as to whether the SLC member can make a totally unbiased decision.* For example, independence could be impaired if the SLC member senses that he owes something to the interested director based on prior events. This sense of obligation need not be of a financial nature.

*London,* 2010 WL 877528, at *12 (emphasis added) (citations omitted).

## II.

### A.

This case came before the district court on the motion of the DISH SLC to terminate the minority shareholder's derivative claims. The basis for the motion was not that the action lacked merit but that the SLC had decided, in its business judgment, that pursuing the action was not in DISH's best interests. As the moving party, the SLC had "the normal burden of proving that there is no genuine issue as to any material fact and that it is entitled to dismiss the complaint as a matter of law." 13 William Meade Fletcher, *supra,* § 6019.50, at 289. And, given the "bye"

the SLC sought to declare in favor of the conflicted DISH director-defendants, the SLC also had the substantive-law "burden of proving independence, good faith, and a reasonable investigation"; there is in this setting "no presumption of independence, good faith, or reasonableness." *Id.* at 289-90.

Normally, we give de novo review to an appeal from an order terminating an action on motion without a trial. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) ("This court reviews a district court's grant of summary judgment de novo, without deference to the findings of the lower court."); *see Shoen v. SAC Holding Corp.*, 122 Nev. 621, 634, 137 P.3d 1171, 1180 (2006) ("Since dismissing a shareholder derivative suit for failure to sufficiently plead the demand requirement is akin to dismissing a complaint for failure to state a claim upon which relief can be granted, such dismissal orders are subject to . . . de novo . . . review."). Despite this law, which is settled, the majority opts to review the district court's dismissal order in this case deferentially, for an abuse of discretion. Majority opinion *ante* at 9-10. As support, it cites the Eighth Circuit's recent decision in *Kokocinski ex rel. Medtronic, Inc. v. Collins*, 850 F.3d 353, 361-62 (8th Cir. 2017). But *Kokocinski* is an outlier in that it rejects the de novo standard of review the First, Fifth, Sixth, and Ninth Circuits deem appropriate in the SLC setting, *Sarnacki v. Golden*, 778 F.3d 217, 222 (1st Cir. 2015); *Bach v. Nat'l W. Life Ins. Co.*, 810 F.2d 509, 513 (5th Cir. 1987); *Booth Family Tr. v. Jeffries*, 640 F.3d 134, 139-41 (6th Cir. 2011); *Gaines v. Haughton*, 645 F.2d 761, 769-71 (9th Cir. 1981), *overruled in part on other grounds by In re McLinn*, 739 F.2d 1395, 1397 (9th Cir. 1984), and in doing so relies on Fed. R. Civ. P. 23.1, even though most recent cases have replaced abuse of

discretion with de novo review for dismissals ordered under that rule, e.g., *Espinoza v. Dimon*, 797 F.3d 229, 234-35 (2d Cir. 2015) (adopting de novo review and collecting cases that "have expressed doubt about the wisdom of reviewing Rule 23.1 dismissals for abuse of discretion rather than de novo").

The dispute over the standard of review signifies a deeper divide than just a difference of opinion over a point of appellate procedure. The question is one of substantive law. *Auerbach* and *Zapata* empower the corporation to terminate an arguably legitimate derivative action on motion, because a specially appointed committee has decided pursuing the claims asserted against the directors in that action is not in the corporation's best interest. To earn this judicial deference, the SLC must demonstrate, usually after allowing the plaintiff discovery into the matter, that no genuine issue of material fact exists respecting the independence and disinterestedness of its members. *Hasan v. CleveTrust Realty Inv'rs*, 729 F.2d 372, 379-80 (6th Cir. 1984) (applying *Auerbach* and determining that genuine issues of material fact respecting the SLC's independence required reversal of summary judgment and remand for litigation on the merits of the derivative action); *London*, 2010 WL 877528, *13 (applying *Zapata* and rejecting the SLC motion to dismiss and allowing the derivative action to proceed because, after applying *Zapata*'s first step, there remained "a material question of fact as to the independence of both SLC members based on their relationships to Tyrrell," the alleged principal wrongdoer). A corporation facing a derivative action "has every opportunity to form a perfectly independent special litigation committee." *Booth Family Tr.*, 640 F.3d at 143. Requiring that the SLC demonstrate that no genuine issue of material fact exists as to the independent

Supreme Court
of
Nevada

(O) 1947A

7

disinterestedness of its members "ensure[s] that stockholders do not have to rely upon special litigation committee members who must put aside personal considerations that are ordinarily influential in daily behavior in making the already difficult decision to accuse fellow directors of serious wrongdoing." *Oracle*, 824 A.2d at 947; *Auerbach*, 393 N.E.2d at 1001 (affirming an order granting an SLC's motion to terminate a derivative action, because "there is nothing in this record to raise a triable issue of fact as to the independence and disinterested status of the[ ] three directors" comprising the SLC).

The majority equates director independence in the demand-futility context with director independence in the SLC motion-to-terminate setting. Majority opinion *ante* at 12-13 (citing *In re ITT Derivative Litig.*, 932 N.E.2d 664, 666 (Ind. 2010)). But the Indiana case on which the majority relies has limited relevance; it answered questions a federal court had certified to the Indiana Supreme Court concerning the meaning of an Indiana state corporation statute Nevada does not have. *ITT Derivative Litig.*, 932 N.E.2d at 665-66. Qualitatively, determining director independence in the demand-futility context implicates many of the same concerns as it does in the SLC dismissal context. But the contexts differ, and with them, so does the burden of proof. In the demand-futility context, the plaintiff bears the burden of proving that interestedness makes demand futile, *Shoen*, 122 Nev. at 636-37, 137 P.3d at 1181; in the SLC context, the SLC "has the burden of establishing its own independence by a yardstick that must be 'like Caesar's wife'—'above reproach.'" *Beam*, 845 A.2d at 1055. (quoting *Lewis*, 502 A.2d at 967). "As a practical matter, the procedural distinction relating to the diametrically opposed burdens and the availability of discovery into independence may

be outcome-determinative on the issue of independence," *id.*, making it possible that "a court might find a director to be independent in the pre-suit demand context but not independent in the [SLC] context based on the same set of factual allegations made by the two parties," *London*, 2010 WL 877528, at \*13.

Put differently, "[a] defendant who desires to avail itself of this unique power to self destruct a suit brought against it ought to make certain that the Special Litigation Committee is truly independent." *Lewis*, 502 A.2d at 967. A court cannot know the subjective independence and good faith of an SLC's members. It can only assess whether the connections identified by the evidence "would be on the mind of the SLC members in a way that generates an unacceptable risk of bias," such that it is unreasonable for a court to require shareholders to rely on their judgment. *Oracle*, 824 A.2d at 947. For these reasons, the rules are different in the SLC as opposed to the demand-futility context. In the SLC context, "[i]f a reasonable doubt exists as to the special litigation committee's independence, the special litigation committee's conclusions are rejected then and there; no further resolution is required on the independence question. The case then proceeds to the merits of the claims against the defendants." *Booth Family Tr.*, 640 F.3d at 142-43; *see Janssen v. Best & Flanagan*, 662 N.W.2d 876, 889-90 (Minn. 2003) (applying *Auerbach* and holding that "[g]enerally, when the committee authorized with making a business decision for the corporation is found to lack the independence needed to grant summary judgment, or where the independence is uncertain, the derivative suit proceeds on its merits").

### B.

According to the majority, the district court reached and resolved contested issues of fact respecting the SLC's independence—

determinations to which we, as a reviewing court, should defer unless "clearly erroneous." Majority *ante* at 9-10 (citing NRCP 43); *id.* at 10 n.2 (describing the district court's task under *Auerbach* as "assessing the weight and credibility of the evidence, and reaching conclusions that depend greatly on factual determinations"). As the district court did not conduct an evidentiary hearing, but decided the motion on written submissions raising genuine issues of material fact, I question how it could have resolved questions of fact without thereby committing an abuse of discretion. *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2416 (3d ed. 2008 and Supp. 2017) (discussing Fed. R. Civ. P. 43 and explaining that "when questions of fact or credibility predominate, a district court's decision not to hear oral testimony often is found to be an abuse of discretion"). But even setting aside the lack of an evidentiary hearing, under the authorities just discussed, the genuine issues of material fact respecting the SLC's independence made it improper, as a matter of law, for the district court to terminate this case on motion of the SLC.

DISH formed its SLC in response to the filing of this suit, which alleges that Charles Ergen, who chairs DISH's board of directors and is its majority shareholder, usurped corporate opportunities and breached fiduciary duties owed DISH in acquiring senior secured debt of LightSquared LP, which owned broadband assets of unique value to DISH. For additional background see *In re LightSquared Inc.*, 511 B.R. 253, 256-314 (Bankr. S.D.N.Y. 2014). As originally formed, the SLC had two members: Tom Ortolf and George Brokaw. Understating matters considerably, the majority admits that "Ortolf and Brokaw's personal and professional ties with [the principal defendant] Ergen represent the type

Supreme Court
of
Nevada

(O) 1947A

10

of improper influences that could inhibit the proper exercise of independent business judgment." Majority opinion *ante* at 16. Thus, both Ortolf and Brokaw "maintain close, personal relationships with" Ergen and Ergen's family, including Ergen's wife, Cantey, who serves alongside her husband as a member of the DISH board of directors. *Id.* Ortolf is one of Ergen's "favorite" friends, his travel companion and colleague of nearly 40 years, whose children worked at DISH. Brokaw chose Cantey Ergen to be his son's godmother. And, just two days after the SLC was formed, Cantey Ergen asked to stay with the Brokaws at their New York City apartment while she visited the city with her child and grandchild, rather than stay in a hotel. Given this and the other evidence of record, some of which the majority summarizes *ante* at 16, the SLC as originally formed did not qualify as an independent and disinterested evaluator of DISH's claims against Ergen.

Three months after forming the SLC, the DISH board added a third member, Charles Lillis, to the SLC. It did so after the plaintiff in this case questioned Ortolf's and Brokaw's objectivity given their ties to Ergen. The board resolution adding Lillis to the SLC operated prospectively only. It provided that "any and all actions or determinations of the [SLC] following the date of theses resolutions must include the affirmative vote of Mr. Lillis and at least one (1) other committee member in order to constitute a valid and final action or determination of the [SLC]." To the majority, the resolution meant that "[o]nce Lillis was added ... the SLC could not act without Lillis's approval." Majority opinion *ante* at 17. "Therefore, despite Ortolf and Brokaw's relationships with the Ergens, ... the district court did not abuse its discretion in

concluding that the SLC was independent based on Lillis' independence and the SLC's voting structure." *Id.* at 18-19.

I cannot agree. Before Lillis was added, the SLC, in its original flawed form, had issued its first report, in which, after investigation, it opposed the derivative-action plaintiff's motion for preliminary injunctive relief; portrayed Ergen's personal interests as aligned with DISH's best interests; and reported to the court on, among other matters, the DISH board's dissolution, with Ortolf's support, of the DISH special transaction committee formed to evaluate DISH's interest in acquiring the LightSquared assets. After Lillis was added, the SLC *continued* its work. By then, though, the mise en scène for the SLC's investigation was set. An investigation involves more than "acts and determinations." It includes countless decisions along the way of whom to interview, what to ask, what to review, what not to review, and how to interpret the information and advice assembled. SLC "investigations do not follow a scientific process like an old-fashioned assembly line. The investigators' mindset and talent influence, for good or ill, the course of an investigation." *Oracle*, 824 A.2d at 941.

I agree with my colleagues that Lillis's ties to senior DISH executive Thomas Cullen do not, standing alone, materially impeach his independence. *See* majority opinion *ante* at 17. Still, those ties, combined with Lillis arriving after the investigation mapped out by Ortolf and Brokaw was already underway, raise genuine concerns respecting bias. Without more, the board's decision to retain Ortolf and Brokaw and add Lillis after plaintiff voiced concern with the SLC's composition raises more questions than it answers. *Cf. Janssen*, 662 N.W.2d at 888-89 (declining to afford a board a second opportunity to constitute a disinterested SLC to

conduct a good faith investigation when it failed to establish the independence and good faith of its initial effort); *Boland v. Boland*, 31 A.3d 529, 565 (Md. 2011) (reversing and remanding order terminating action on motion of SLC where the record did not provide enough information for the court to "properly examine the specific circumstances surrounding the selection and delegation of responsibility to the SLC in determining whether it has shown its independence").

The voting structure DISH established for the SLC when it added Lillis does not dispel and, in fact, actually increases the bias concerns. Lillis did not have sole authority; he needed the affirmative vote of Ortolf or Brokaw, or both, for the SLC to act. As the majority recognizes, the affiliations between Ortolf and Brokaw, on the one hand, and the Ergens, on the other, were significant enough to conclude they lacked independence. The resolution structured the SLC so that Lillis could not cause it to take "valid and final action" or make a binding determination unless he could overcome the natural inclination of either Ortolf or Brokaw, based on those affiliations, to favor the Ergens.

The three two-member SLC cases the majority cites to suggest that the voting structure somehow saves the SLC differ significantly. Majority opinion, *ante*, at 18. In each, the reviewing court concluded that the connections alleged as a basis for questioning the independence of one of the two directors were not sufficiently material to cast genuine doubt on the director's disinterestedness. *See Strougo ex rel. The Brazil Fund, Inc. v. Padegs*, 27 F. Supp. 2d 442, 451 (S.D.N.Y. 1998) ("Both of the members of the SLC are 'disinterested' members of the SLC in the sense that they are in a position to base their decisions on the merits of the issues rather than on extraneous considerations or influences."); *In re Oracle Sec. Litig.*,

Supreme Court
of
Nevada

(O) 1947A

13

852 F. Supp. 1437, 1442 (N.D. Cal. 1994) (the contacts of Costello, the assertedly interested SLC member, "alone, do not demonstrate an interest or bias that would compromise Costello's objectivity"); *Johnson v. Hui*, 811 F. Supp. 479, 487 (N.D. Cal. 1991) (the assertedly interested member's "nominal appearance as a defendant does not undermine his ability to operate as an independent and unbiased member of the SLC"). The cases then offered, as an alternative holding, that even crediting the suggestion of taint, the taint did not "rise to the level where the Court should conclude the SLC is tainted," given the unquestionable independence of the other member of the SLC and its overall investigation. *Johnson*, 811 F. Supp. at 487; *see Oracle Sec. Litig*, 852 F. Supp. at 1442 ("Even[ ] if Costello's background suggested some alleged interest . . . there is nothing to indicate that the SLC's judgment was tainted in any way."). In this case, by contrast, the connections between Ortolf and Brokow, and the Ergens, do not allow the court to posit, as the courts in *Strougo, Oracle Securities Litigation*, and *Johnson* did, that the allegedly interested SLC member was in fact disinterested and independent. We have instead an SLC comprised of two interested and one arguably disinterested member, with the arguably disinterested member, Lillis, coming late to the work of the SLC. More concerning, while the SLC cannot act unless Lillis is in the majority, Lillis cannot act and avoid a deadlock, unless he persuades a fellow director, whose independence and disinterestedness is fairly subject to question, to side with him. While this works well if the vote is to dismiss, it does not work if the vote is to pursue the derivative litigation. Just as Lillis can hold out by being required to be part of any majority, so too can Ortolf and Brokaw hold out, by refusing to vote with Lillis.

### III.

The burden was on DISH to show that it appointed an SLC whose independence and disinterestedness cannot be seriously questioned. The company had every opportunity to form a perfectly independent special litigation committee, yet did not. Lacking an explanation for the SLC's membership having been structured and maintained as it was, I am not convinced, as both *Auerbach* and *Zapata* require, that the SLC's recommendation to dismiss was driven solely by consideration of DISH's best interest. I would reverse and remand for the litigation to proceed on the merits and therefore respectfully dissent.

_____*Pickering*_____, J.
Pickering

